519 P.2d 194

**Robert S. WOLKIN, Appellant,**

**v.**

**The CIVIL SERVICE COMMISSION OF the CITY OF TUCSON; Paul Miner, in his capacity as Secretary to the Civil Service Commission of the City of Tucson, and as Personnel Director for the City of Tucson; and Herbert E. Williams, Attorney for the City of Tucson, Appellees.**

**Herbert E. WILLIAMS, Cross-Appellant,**

**v.**

**Robert S. WOLKIN, Cross-Appellee.**

**No. 2 CA–CIV 1534.**

Court of Appeals of Arizona, Division 2.

Feb. 27, 1974.

Barry M. Corey, Tucson, for appellant and cross-appellee.

James D. Webb, City Atty., Herbert E. Williams, Former City Atty., Cusick, Watkins, Stewart & Harris by Hugh W. Stewart, Sp. Counsel for City of Tucson, Tucson, for appellees and cross-appellant.

## OPINION

HOWARD, Judge.

Appellant and cross-appellee, hereinafter referred to as appellant, appeals from a superior court judgment confirming the action of the Civil Service Commission of the City of Tucson approving termination of his employment. He had instituted a special action in superior court to compel his reinstatement as an assistant city attorney I in the employ of the City of Tucson.

The facts giving rise to the litigation are as follows. On December 28, 1972, the former City Attorney for the City of Tucson submitted discharge papers to the appellant and to the Civil Service Commission in order to bring about appellant's discharge. A hearing was held before the Civil Service Commission on January 19, 1973, with four of the members present. The reason given by the city attorney for appellant's discharge was "conduct unbecoming a city attorney". The basis for the charge was that appellant, while intoxicat-

ed, interfered with two city police officers in the performance of their duties. At the hearing the city attorney presented his evidence, appellant put on his defense and the city attorney then put on rebuttal evidence. At the conclusion of the hearing a motion was made and seconded to reduce the action from discharge to a lesser penalty. The vote was two in favor of the motion and two opposed. A second motion was made to uphold the termination of appellant but that motion failed to receive a second.

Rule XII, Sec. 4(c) of the Civil Service Rules and Regulations, 1973, provides:

"The Commission may sit as a whole at said hearing and take testimony, or it may delegate one of its members to hold the hearing and take the testimony, in which case the transcript of the hearing shall be reviewed by a majority of the Commission prior to its making a decision. A DECISION TO IMPOSE A LESSER PENALTY OR TO REINSTATE THE EMPLOYEE SHALL REQUIRE A MAJORITY AFFIRMATIVE VOTE OF THE COMMISSIONERS THEN CONSTITUTING THE QUORUM. IN THE ABSENCE OF A DECISION BY A MAJORITY, THE ACTION OF THE APPOINTING OFFICER SHALL BE DEEMED SUSTAINED."

The Civil Service Commission concluded that the appointing officer's discharge of the appellant was to be upheld. After the show cause hearing in superior court, the trial judge found that the superior court had jurisdiction to hear the matter but that the appellant was not entitled to be reinstated to his former position. From that part of the judgment denying him reinstatement the appellant appeals.

Appellee Herbert Williams, has cross-appealed contending that the trial court was without jurisdiction. None of the other appellees joined in the cross-appeal. Without deciding whether cross-appellant can appeal the judgment under the facts of this case, we will first examine the jurisdiction of the superior court.[1]

■ On the issue of jurisdiction the city attorney contends (1) that since appellant was hired under the Emergency Employment Act (EEA), the Civil Service Commission had no jurisdiction to give the appellant a hearing; (2) appellant was not a Civil Service employee; and (3) appellant was not eligible for employment under the EEA. We do not agree with the City Attorney's "Jekyllian" argument.

Chapter XXII, § 3(a) of the Charter of the City of Tucson provides:

"All officers, deputies, clerks, and employees subject to the civil service provisions of this Charter shall be in the classified service of the city, and all persons in the classified service shall be under and subject to the rules and regulations of the civil service commission."

Section 10–4 of the Tucson Code provides in part:

"The classified service shall be comprised of:

*Sec. 10–4(1).* The following appointive officers of the city as enumerated in chapter V, section 2, of the Charter: city engineer; superintendent of the water department; superintendent of streets; chief of police; fire chief, and such other officers as may have heretofore or may hereafter be provided for by ordinance in accordance with subsection (15) thereof.

*Sec. 10–4(2). All other positions of employment now existing or hereafter created in the city service which are not enumerated in Chapter V, section 2, of the Charter, except the positions of assistant city manager and the administra-*

---

1. In order to appeal one must be aggrieved by the judgment and in order to be "aggrieved" by a judgment there must be a denial of some personal or property right by a judgment and such denial must come as a direct result of the decree. Rule 73(a), Ariz.R.Civ.P., 16 A.R.S. In re Griswold's Estate, 13 Ariz.App. 218, 475 P.2d 508 (1970); Aegerter v. Duncan, 7 Ariz.App. 239, 437 P.2d 991 (1968).

tive assistant to the city manager and those established under the jurisdiction of the county health officer and the library board." (Emphasis added)

None of the exceptions found in the charter or code are applicable to the appellant.

We find nothing in the EEA which would lead us to believe that appellant is not entitled to the rights granted to an employee under the Civil Service Commission rules and regulations.

Consider the clear intent of Congress as expressed in the report of the Senate Labor and Public Welfare Committee:

"The committee is clear in its intent that persons employed in public service jobs are to be *treated no differently from other persons employed in similar public occupations by the same employer.*" (See U.S.Code Congressional and Administrative News, p. 1189, 92nd Congress, 1st Session, 1971, Senate Report No. 92–48.) (Emphasis added)

Consider further the language of the Employee Information Sheet, a copy of which is placed in the file of each EEA employee:

"Those EEA employees who have successfully passed a Civil Service examination and have been certified for an EEA position from an existing eligibility list *are entitled to the same rights, privileges, and benefits . . ., as any other Civil Service City employee* in the same classification." (See p. 1 of the Employment Information Sheet marked Petitioner's Exhibit No. 1 and attached to the Miner Deposition) (Emphasis added)

The record shows that appellant took all the steps required by the Civil Service Commission rules and regulations to qualify him as a Civil Service employee. Mr. Miner, Secretary of the Civil Service Commission and Director of Personnel, City of Tucson, testified that appellant was a Civil Service employee.

■ The City Attorney states that an examining committee had been established pursuant to the procedures and policy of the City Attorney's Office which further examines the applicants submitted to the City Attorney's Office to determine their suitability for employment. He contends that appellant was never examined by this committee and therefore cannot be a Civil Service employee. This contention is without merit. The rules and regulations of the Commission do not provide for such an examining committee.

We now turn to the question presented by appellant's appeal. Chapter XXII, § 3(c) of the Charter of the City of Tucson provides in part:

"Persons who have served through their probationary period and who have received permanent appointment in the classified service shall not be removed, suspended without pay, discharged, or reduced in pay or position, except for just cause, which shall not be religious or political. . . . "

Appellees assert that under the foregoing charter provision appellant can be discharged for any reason as long as it is not for political or religious reasons.

Section 10–10(12), Tucson Code, sets forth what constitutes "just cause". It lists no less than 13 examples. Appellees' argument on this point is spurious.

Appellant contends that since Chapter XXII, § 3(c) requires a showing of just cause on the part of the discharging officer, at the commission hearing the discharging officer has the burden of proof. Therefore, he maintains that Rule XII, § 4(c) of the Civil Service Rules and Regulations, 1973, which provides for upholding the decision of the discharging officer if the Commission vote is tied, is violative of the City Charter. Appellant contends that since the discharging officer failed to convince a majority of the Commission that there was just cause, the officer failed in his burden of proof and appellant should be reinstated.

■■ In order to determine the validity of the Civil Service Rule set forth above, it is necessary to determine the effect of

the Charter provision. Clearly it is intended that (a) Civil Service employees are not to be removed or discharged without "just cause", and (b) removal is to be effected by the appointing or employing officer, but subject to the further requirement that (c) in the event an employee seeks a hearing with respect to his removal or discharge the Civil Service Commission shall provide a "fair and impartial hearing". In order for the Charter requirement with respect to "just cause" to have meaning and be effective, the determination of the existence of cause must be an affirmative burden which the appointing officer must undertake at the hearing before the Civil Service Commission; the only effective safeguard the Charter can provide that "just cause" exist before an employee can be removed is that the Civil Service Commission must affirmatively find the existence of such "just cause". It should be borne in mind that one of the purposes of the Civil Service system is to provide for the " . . . security of the faithful employee by giving him permanence of employment, at least for the period described by law, and to free such employee from the fear of political and personal prejudicial reprisal . . . ." 15 Am.Jur.2d Civil Service, § 1. Thus, to give meaning to the Charter, the burden of proving "just cause" for a discharge must be borne by the appointing officer in a Civil Service discharge hearing, and to the extent that the Civil Service Commission Rule purports to shift that burden the Rule is contrary to the Charter pursuant to which it was promulgated, hence, void and unenforceable.

> "The Civil Service Commission of the City of Tucson adopted rules and regulations designed to aid it in the exercise of its powers under the law and *so long as such rules and regulations do not conflict with the provisions of the City Ordinances and City Charter or with the statutes and Constitution of the State, they are entitled to be given the force and effect of law*." (Emphasis added)

Civil Service Commission of City of Tucson v. Foley, 75 Ariz. 364, 257 P.2d 384 (1953). When the rules promulgated by the Commission are violative of the Charter provisions the Commission lacks jurisdiction to implement the rules.

The position that the discharging officer has the burden of proof at the hearing is in accord with the weight of authority. See McQuillin, Municipal Corporations § 12.261(c) and (d) and cases annotated therein. An examination of the authorities which appear to hold that the employee has the burden of proof in Civil Service Commission hearings deal with what would in a trial be defenses which the defendant would have the burden of proving. See Crede v. City of Pittsburgh, 355 Pa. 369, 49 A.2d 700 (1946), (City discharged employee showing prima facie evidence of funding cuts; employee had burden of proving lack of good faith in his dismissal); Carter v. Thompson, 164 Va. 312, 180 S.E. 410 (1935), (Director of Public Safety enacted a regulation prohibiting firemen from joining labor organizations; employees had the burden of showing regulation to be arbitrary and unreasonable).

■ If the burden of proof was upon the discharging officer, then the City Attorney had the duty to establish the truth of his allegations by a preponderance of the evidence and to convince a majority of the Commission of the truth of his allegations. A tie vote by the Commission is indicative of the city attorney's failure to carry this burden. Cf. Cupps v. City of Toledo, 172 Ohio St. 536, 179 N.E.2d 70 (1961).

To hold otherwise would render meaningless the right to an appeal given to the employee by the City Charter. The effect of the present rule is to count the discharging officer's vote for dismissal. Instead of having a decision by the Commission, as required by the Charter, an employee has a decision by two members of the Commission *and* the discharging officer.

The judgment is reversed and the cause remanded with directions to order the Civil Service Commission of the City of Tucson to reinstate the appellant.

HATHAWAY, C. J., and KRUCKER. J., concur.