534 P.2d 430

The CIVIL SERVICE COMMISSION OF the CITY OF TUCSON, Paul Miner in his capacity as Secretary of the Civil Service Commission of the City of Tucson, William J. Gilkinson, Chief of Police of the City of Tucson, and Gene Reid, Director of Parks and Recreation, Appellants,

v.

Lennis J. MILLS, Appellee.

No. 2 CA–CIV 1755.

Court of Appeals of Arizona, Division 2.

April 29, 1975.

Rehearing Denied June 26, 1975.

James D. Webb, Tucson City Atty., by Norbert W. Ludwig, Asst. City Atty., Tucson, for appellants.

Quigley & Quigley, P. C., by James E. Quigley, Tucson, for appellee.

KRUCKER, Judge.

This is an appeal from a judgment in a special action which sought review of a Civil Service Commission vote to sustain the decision of the Director of Parks and Recreation to terminate the appellee's employment. The petition for special action was granted in favor of appellee on the grounds that: (1) appellee was denied procedural due process of law because he was not given a reasonably definite statement of the grounds for revoking his status as a special patrolman; (2) the revocation of appellee's status as a special patrolman was not supported by any evidence presented to the Civil Service Commission. The trial court ordered appellee reinstated in his former position as parks guard, with all benefits thereof, effective as of November 24, 1974.

The facts of the case are as follows. Appellee was a duly qualified and acting employee of the Parks and Recreation Department of the City of Tucson having served his probationary period and received status of a permanent employee. The job title for this position is parks guard. On November 1, 1973, appellee was served with a personnel action form indefinitely suspending him from his work. On November 21, 1973, he was served with a personnel action form purportedly discharging him from his position effective as of November 9, 1973. This action was precipitated by the revocation of appellee's status as a special patrolman by the Tucson Chief of Police.

Appellee filed a timely request to appeal his discharge before the Civil Service Commission. The Commission found appellee no longer fulfilled the requisite qualifications to continue in the position of parks guard. Specifically, to hold the position of parks guard one must be sworn in as a special policeman by the City Police Chief who exercises sole discretion upon whom this status will be conferred. Tucson Code § 20–11.1. However, at no time is a special policeman a part of or affiliated with the Tucson Police Department. Tucson Code § 20–11.4. Pursuant to Tucson Code § 20–11.6, the police chief may "revoke the status of special policemen when he finds such revocation to be in the best interest of the City."

## SUFFICIENCY OF NOTICE

Upon review, we affirm with modifications the action of the lower court. In the instant case, personnel action forms (Exhibits A and B) indefinitely suspending and subsequently discharging appellee gave the following explanation for the action:

Exhibit A reads in part:

"Explanation of action: Suspended indefinitely by police department, pending investigation. Suspended also by Parks Guard Supervisor, Max Hillyard, pending Police investigation."

Exhibit B reads in part:

"Explanation of action: Employee is being dismissed because of incidents occurring up to and on October 28, 1973. Review of the Tucson Chief of Police resulted in permanent suspension of employee's credentials."

Chapter XXII, § 3(c) of the City of Tucson Charter indicates that when an appointing or employing officer removes an employee who has a permanent appointment, he shall furnish written notice and reasons therefor to the employee and the Civil Service Commission. Rule XI, § 2, Tucson Civil Service Commission's Rules and Regulations, provides in part:

"Such notice shall be on a form supplied by the Director and shall . . . clearly set forth the specific act or acts or omission thereof which constitute cause for the action of the appointing officer."

Additionally, the Civil Service Commission must strictly comply with its own rules and regulations. City of Tucson v. Simpson,

84 Ariz. 39, 323 P.2d 689 (1958), and cases cited therein. In the instant case, the notice of dismissal fails to give the grounds for dismissal with the requisite degree of specificity. Rather, the notice merely alludes to "incidents" and the resulting suspension of certification by the Tucson Chief of Police.

Appellants assert that mere notice of suspension of the appellee's credentials by the Chief of Police was sufficient. The alleged rationale for this conclusion is that because the Chief of Police is vested with the sole power to grant and revoke the status of special policemen, neither the Civil Service Commission nor the Director of Parks and Recreation had any authority to inquire into the basis for the Police Chief's action. Thus, appellee need not be given any more detailed notice. Appellants conclude by asserting that the mere occurrence of the revocation of certification is a sufficient basis upon which to affirm the appellee's dismissal.

If this were a case wherein appellee had lost his status as special policeman due to the actions of some certifying agency outside the jurisdiction of the Civil Service Commission, we might find merit in appellants' contentions that mere notice of loss of certification was sufficient. However, nothing in the Tucson City Charter or Tucson Code restricts the Civil Service Commission's ability to inquire into the ultimate grounds for dismissal when such action is precipitated by an agency of the city. *See*, Ch. XXII, § 3(c) of the City of Tucson Charter; Tucson Code §§ 10–14, 10–19 and 10–20; Tucson Civil Service Rules and Regulations, Rule XII, § 4(d). If the appellants' logic is followed, failure to give specific notice of the basis of the Police Chief's actions would make appeal to the Civil Service Commission a seemingly futile and meaningless endeavor. Absent adequate notice, upon what basis could appellee predicate his appeal before the Civil Service Commission? The following observation is made in McQuillin, Mun.Corp., (3rd Ed.), § 12.257b:

"Removal or suspension charges against an officer or employee should be definite and certain, and must contain sufficient specification of the grounds or causes of action, in order to inform the accused sufficiently to enable him to prepare his explanation or defense. * * * The charges must be specific as to time, place and the nature of the offense charged. Generic terms like 'incompetency', 'unfitness', and the like state no cause of action. Mere general statements of rules violated, and general averment as to acts of misconduct and the like, without giving specific details, are insufficient to warrant a discharge, particularly where timely objection was made."

## SUFFICIENCY OF THE EVIDENCE

▇ Secondly, the lower court properly found insufficient evidence was presented to the Civil Service Commission upon which to predicate appellee's dismissal. The discharging officer has the burden of proof at the Commission hearing and must establish the truth of his allegations by a preponderance of the evidence. Wolkin v. Civil Service Com'n of City of Tucson, 21 Ariz.App. 341, 519 P.2d 194 (1974).

Appellants contend that the Director of the Department of Parks and Recreation, as the party who appointed appellee, need only establish that appellee had lost the requisite certification granted by the Chief of Police to carry his burden of proof. Furthermore, they reassert the argument that the Civil Service Commission may not inquire into the basis for the Police Chief's revocation of appellee's certification.

▇ The only authority appellants cite to support the latter assertion is Tucson Code §§ 20–11.1 and 20–11.6. The instant code provisions do not preclude review of the exercise of the Police Chief's authority by the Civil Service Commission. The mere fact that the Police Chief is given the discretion to grant or revoke certification does not imply that such authority may be ex-

ercised arbitrarily or capriciously without review by the Commission.[1] The Commission, pursuant to Tucson Code §§ 10–19 and 10–20 is given broad power to enforce the Tucson Charter provisions relating to Civil Service.[2] Additionally, pursuant to Tucson Code § 10–14, all officers and employees of the City are instructed to comply with and aid in carrying out the Civil Service provisions of the City Charter.[3]

Therefore, the requisite authority to inquire into the basis of the Police Chief's action in the instant case is vested in the Commission.

■ Additionally, the mere presentation of the Police Chief's letter notifying the Director of Parks and Recreation of appellee's loss of certification did not constitute the requisite evidence upon which to uphold a dismissal for "just cause". Appellants had the affirmative burden of going forward with the evidence and showing the facts upon which the Police Chief's actions were predicated and that these facts

justified revocation of the appellee's status as a special policeman. Wolkin v. Civil Service Com'n of the City of Tucson, supra, at 345, 519 P.2d 194. No evidence was submitted to the Commission of misconduct by appellee. We find that the record on appeal has been supplemented with Tucson Police Department reports alleging disorderly conduct on the part of appellee. However, these reports do not appear to have been submitted in evidence before the Commission. Indeed, the transcript of the Commission's proceedings discloses that this subject was intentionally avoided under the mistaken belief that it was an area that need not be examined.

REMEDIAL ACTION

■ Finally, appellants challenge the basis of the trial court's review of the instant action and its authority to order reinstatement of appellee. We find that we need only address ourselves to the order of reinstatement. The general rule seems

---

1. Chapter XXII, § 3(c) of the Charter of the City of Tucson provides in part:

    "Persons who have served through their probationary period and who have received permanent appointment in the classified service shall not be removed, suspended without pay, discharged, or reduced in pay or position, *except for just cause*, which shall not be religious or political. . . . " (Emphasis added)

    We hold that Tucson Code § 20–11.6 must be construed in light of the "just cause" provision of the Charter of the City of Tucson. This holding is predicated upon Ch. VII, § 1 (2) of the Charter wherein the Mayor and Council are only allowed to pass ordinances which do not conflict with the Charter. If the requirement of "just cause" is not imputed to the exercise of authority pursuant to Tucson Code § 20–11.6, then the Code provision would be in conflict with the Charter.

2. "Sec. 10–19. Commission's authority to investigate

    The commission may investigate the enforcement of the Charter provisions relating to civil service, this chapter, and its own rules and regulations and inquire into the nature, tenure and compensation of all positions of employment in the classified service of the city as and when it deems the same necessary or expedient. It may make findings of fact and recommendations as a

consequence of any such investigations to appointing officers or the mayor and council. It shall make such other inquiries and investigations as the mayor and council may direct. (1953 Code, Ch. 10, § 18)

    Sec. 10–20. Power to administer oaths, require production of evidence, subpoena witnesses.

    The commission, each member thereof, and the director shall have power to administer oaths and affirmations, subpoena witnesses, and compel the production of books, papers and documents which it deems pertinent to any inquiry, investigation or hearing authorized by the Charter or by this chapter. The chief of police shall, on request of the commission or the director, detail a police officer to serve such subpoenas. (1953 Code, Ch. 10, § 19)"

3. "Sec. 10–14. Officers and employees to comply with, carry out civil service provisions.

    All officers and employees of the city shall comply with and aid in all proper ways in carrying out the civil service provisions of the Charter, the provisions of this chapter, and the rules and regulations thereunder. All officers and employees shall furnish or allow access to any records or information which the director or commission may request for any purpose consistent therewith. (1953 Code, Ch. 10 § 14)"

to be that where an administrative agency has been found to have acted in violation of procedural requirements or arbitrarily, the administrative agency is entitled to have the proceedings returned. to it. English v. City of Long Beach, 35 Cal.2d 155, 217 P.2d 22 (1950); Straub v. Department of Public Welfare, 31 Wash.2d 707, 198 P.2d 817 (1948); 2 Am.Jur.2d Administrative Law § 765. Therefore, the lower court should have ordered the matter remanded to the Civil Service Commission for further proceedings.

The judgment is affirmed as modified.

HOWARD, C. J., and HATHAWAY, J., concurring.