559 P.2d 663

The CITY OF TUCSON, the Civil Service Commission of the City of Tucson, Schuyler Lininger and Jane Doe Lininger, husband and wife, George Codd and Jane Doe Codd, husband and wife, Paul Miner in his Capacities as Secretary of the Civil Service Commission and Director of Personnel of the City of Tucson, William J. Gilkinson, Chief of Police of the City of Tucson, and Gene Reid, Director of Parks and Recreation, Appellants,

v.

Lennis J. MILLS, Appellee.

No. 2 CA–CIV 2154.

Court of Appeals of Arizona, Division 2.

Nov. 5, 1976.

Rehearing Denied Dec. 21, 1976.

Review Denied Jan. 25, 1977.

James D. Webb, Tucson City Atty. by Thomas J. Wilson, Asst. City Atty., Tucson, for appellants.

Quigley & Quigley, P. C. by James E. Quigley, Tucson, for appellee.

HOWARD, Chief Judge.

This is an appeal from a judgment ordering that the decision of the Civil Service Commission, upholding the suspension of appellee Mills, be set aside and that appellee be provided with his previously suspended credentials and be reinstated as an employee of the Parks and Recreation Department of the City of Tucson.

The facts of the case are as follows. Appellee, a duly qualified and permanent employee of the City of Tucson, was serving in the capacity of a parks guard at the time of

his suspension on November 1, 1973. On November 21, 1973, Mills was served with a personnel action form discharging him from his position effective as of November 9, 1973. This action was precipitated by the revocation of appellee's status as a special patrolman by William J. Gilkinson, Chief of the Tucson Police Department, pursuant to Tucson Code Sec. 20–11.6. Such special status is required in order to be a parks guard.

Mills appealed his termination to the Civil Service Commission of the City of Tucson. The Commission ruled that the appellee no longer qualified for the position of parks guard and appellee filed a special action in superior court seeking review of this ruling. The trial court ordered appellee reinstated in his former position, with all benefits thereof, effective as of November 24, 1974. The ruling was in turn appealed to this court culminating in our decision in *Civil Service Com'n of City of Tucson v. Mills,* 23 Ariz.App. 499, 534 P.2d 430 (1975).

It was our opinion that the general personnel action form suspending Mills did not enable him to adequately prepare an explanation or defense. The notice of dismissal failed to state grounds with the requisite degree of specificity.[1] The mere allusion to "incidents" failed to satisfy either Chapter XXII, Sec. 3(c) of the City of Tucson Charter or Rule XI, Sec. 2, Tucson Civil Service Commission's Rules and Regulations. We therefore ordered the matter remanded to the Commission for further proceedings.

Pursuant to the mandate of this court, the Civil Service Commission convened on September 17 and 18, 1975, and conducted a full hearing on the termination of Mills. Prior to the hearing dates, Mills had been notified of the specifications supporting the basis for his discharge. These grounds were as follows:

"1. On or about October 11, 1973, after the receipt of a restraining order, Mr. Mills became disorderly, threatening the safety of his family which resulted in a call to Tucson Police officers in order to calm and restrain him. Said acts occurred at 8011 East 2nd Street with Officers Woodward and Harriman responding, in addition to Lieutenant Zuniga.

2. On or about October 27, 1973, at approximately 1:00 A.M., in the parking lot of the Southern Arizona Bank building at 44 East Broadway, Mr. Mills engaged in an argument with his wife, became abusive and disorderly, and did further assault and batter one John Wellman by striking Mr. Wellman in the face.

3. That on or about October 27, 1973, at approximately 2:30 A.M., Mr. Mills further engaged in disorderly conduct at 8011 East 2nd Street, resulting in a call to the Tucson Police Department. Officers appeared and restrained Mr. Mills which required at one point, the removal of three weapons and ammunition from Mr. Mills' possession, in addition to his police officer identification. Officer Webb and Sergeant Tripp were the field officers."

After hearing extensive argument, the Commission found just cause to exist for Mills' termination and upheld the discharge. This ruling of the Commission was again appealed by way of special action to the superior court which held that the actions of the Commission in upholding Mills' dismissal were arbitrary, capricious and not based upon just cause. This appeal followed.

Four questions have been presented for our determination:

1. Was appellee automatically entitled to reinstatement when he appeared before the Civil Service Commission in September, 1975?

2. Did the conduct exhibited in the incidents cited in the notice of termination constitute just cause for the action taken by the Tucson Chief of Police?

---

1. "Explanation of action: Employee is being dismissed because of incidents occurring up to and on October 28, 1973. Review of the Tucson Chief of Police resulted in permanent suspension of employee's credentials."

3. Did the superior court by the terms of its judgment err in its determination of just cause?

4. Did the superior court improperly substitute its judgment of the evidence for that reached by the Civil Service Commission?

■ We have reviewed the record and find that appellant's contentions have merit. Therefore, we reverse. Before reaching the issue of just cause, however, it is necessary that we first consider appellee's argument that he was entitled by the mandate of this court to reinstatement when he appeared before the Commission in September, 1975.

Evidently it is appellee's position that our remand for further proceedings in *Civil Service Com'n of City of Tucson v. Mills, supra,* was a mandate to perform a ministerial act (i. e., reinstatement). Mills asserts that failure to follow this mandate violated due process of law. We disagree.

The specific language used in *Mills* was: "We find that we need only address ourselves to the order of reinstatement. The general rule seems to be that where an administrative agency has been found to have acted in violation of procedural requirements or arbitrarily, the administrative agency is entitled to have the proceedings returned to it. *English v. City of Long Beach,* 35 Cal.2d 155, 217 P.2d 22 (1950); *Straub v. Department of Public Welfare,* 31 Wash.2d 707, 198 P.2d 817 (1948); 2 Am.Jur.2d Administrative Law Sec. 765. Therefore, the lower court should have ordered the matter remanded to the Civil Service Commission for further proceedings." 23 Ariz.App. at 502–503, 534 P.2d at 434.

The superior court understood this language to mean that the matter was to be referred back to the Commission for further review and inquiry into the basis of Chief Gilkinson's action. This interpretation was correct.

A remand for further proceedings means that the case is returned to the administrative agency so that it may take further action in accordance with applicable law. *Ford Motor Co. v. National Labor Relations Board,* 305 U.S. 364, 59 S.Ct. 301, 83 L.Ed. 221 (1939). Such a remand does not dismiss or terminate the administrative proceeding. Rather, the administrative agency may take a fresh look at the matter involved. *Federal Trade Commission v. Morton Salt Co.,* 334 U.S. 37, 68 S.Ct. 822, 92 L.Ed. 1196 (1948); 2 Am.Jur.2d Administrative Law Sec. 766 (1962).

"Where the administrative body has made invalid or inadequate findings or has not afforded a fair hearing, the court granting judicial review can and should remand the case to the administrative body '*for further proceedings to the end that valid and essential findings may be made.*'" (Emphasis ours) *Pennsylvania State Athletic Commission v. Bratton,* 177 Pa.Super. 598, 112 A.2d 422, 425 (1955).

In short, our mandate required that specification for the grounds for termination be provided, not that appellee be reinstated. The Commission did not err in failing to order appellee's reinstatement.

As the final three issues raised on appeal are integrally related, we shall consider them together. The laws and procedures governing Civil Service termination and subsequent review are as follows. Ch. XXII of the Charter of the City of Tucson creates a civil service commission and a classified service for certain city employees, officers, deputies and clerks. Its purpose is to secure more efficient employees and thereby promote better government. *Civil Service Com'n of City of Tucson v. Livingston,* 22 Ariz.App. 183, 525 P.2d 949 (1974). Sec. 3(c) of said chapter provides in part:

"Persons who have served through their probationary period and who have received permanent appointment in the classified service shall not be . . . discharged . . . except for just cause, which shall not be religious or political."

Sec. 10–10(12) of the Tucson City Code enumerates certain conduct which may constitute "just cause":

"The following shall constitute just cause, *although enumeration thereof shall not exclude other causes,* namely: Incompetence; insubordination; inattention to duties; discourteous treatment of the public or fellow employees; violation of the ordinances of the mayor and council, the rules and regulations of the commission, and the rules and regulations of the department in which an employee is employed; absence from duty without leave; physical or mental unfitness to perform prescribed duties; excessive use of intoxicating liquors; addiction to the use of narcotics; immoral conduct; conviction of a crime involving moral turpitude; failure to pay or failure to make reasonable provision for payment of just debts due and owing; and conduct, while either on or off duty, tending to cause scandal to the service. In no case shall any political or religious belief or affiliation or any indefinite or vague charges, such as for the good of the service, be considered just cause." (Emphasis added)

■ It is clear that the Civil Service Commission cannot base "just cause" upon arbitrary or capricious reasons, yet a finding of misconduct justifying suspension or discharge need not be predicated upon the violation of any particular rule or regulation. *Civil Service Com'n of City of Tucson v. Livingston, supra.* Rather, as we noted in *Livingston,* a finding of misconduct may be based upon the violation of some implicit standard of good behavior imposed upon one who maintains a special position in the public eye. A discharge may be upheld ". . . only if it meets two criteria of reasonableness: One, that it is reasonable to discharge him because of certain conduct, and the other, that he had fair notice, express or fairly implied, that such conduct would be ground for discharge." 22 Ariz. App. at 188, 525 P.2d at 954.

■ Further, in order that the termination be valid, a majority of the Commission members must be persuaded by a preponderance of the evidence to concur with the opinion of the discharging officer. *Wicks v. City of Tucson,* 112 Ariz. 487, 543

P.2d 1116 (1975). The touchstone of preponderance as applied to the testimony of witnesses is the capacity of the submitted testimony to enforce belief on the arbiter to whom it is submitted. *Hewett v. Industrial Commission,* 72 Ariz. 203, 232 P.2d 850 (1951).

■ However, should the Commission choose to discharge an employee, the scope of judicial review is limited. The superior court, in reviewing an administrative determination, may only decide whether the administrative action was illegal in that it was arbitrary, capricious or involved an abuse of discretion. *Arizona Board of Regents v. Superior Court,* 106 Ariz. 430, 477 P.2d 520 (1970). Only where the administrative decision is unsupported by competent evidence may the trial court set it aside as being arbitrary and capricious. *Dunklee v. Motor Vehicle Division of Dept. of Rev.,* 521 P.2d 1284 (Colo.App.1974). The court should neither consider the propriety of the Commission's findings nor substitute its judgment for that of the Commission. *Guildner Way, Inc. v. Board of Adjustment of Adams County,* 35 Colo.App. 70, 529 P.2d 332 (1974).

A review of the record and judgment rendered by the court below reveals (1) compliance with the *Livingston* "just cause" test, and (2) a misinterpretation of Sec. 10–10(12) of the Tucson City Charter.

In its judgment the trial court stated: "Reviewing the terminology of this section of the Tucson City Charter and reviewing the transcript of proceedings of the Civil Service Commission proceedings convened on September 17 and 18, 1975, *the Court finds that the only provision in that Charter Section that could possibly apply to this case is the provision that states* 'and conduct while either on or off duty tending to cause scandal to the service.'" (Emphasis added)

This statement reflects a misunderstanding of the applicable Tucson City Charter provision. In so holding, the court not only ignored enumerated categories in Sec. 10–10(12) which the Civil Service Commission

might have deemed pertinent, e. g., physical or mental unfitness, but also disregarded the prefacing comment to the same provision which states, "The following shall constitute just cause, although enumeration thereof shall not exclude other causes . . .."

▪ Appellee has asserted that the doctrine of "ejusdem generis" is applicable when one considers whether or not a cause not enumerated in Sec. 10–10(12) of the Tucson City Code is proper as the basis for a permanent employee's discharge. We disagree. Sec. 10–10(12) is not so particularized in its classifications as to give rise to the application of the doctrine. The provision encompasses a wide spectrum of both on and off duty conduct. Certain actions, such as immoral conduct or failure to pay just debts due and owing, may bear little relation to one's actual job performance. Under such circumstances, it would be virtually impossible to apply "ejusdem generis" in a meaningful way.

▪ In our opinion, the Civil Service Commission could well have found that the incidents, fully detailed through specification, met certain of the enumerated causes or constituted just cause when viewed in their totality. The City of Tucson has the right to take action where its employee's conduct may discredit the City, scandalize the employer-employee relationship and perhaps constitute a basis for criminal action.[2] In the case at bench, the Civil Service Commission heard extensive testimony to the effect that Mills had struck another individual twice in the face in a public parking lot, and had twice engaged in disorderly conduct resulting in calls to and action by the Tucson Police Department in settling the disturbances.

Appellee, as a parks guard, held a commission as a special policeman with the City. This authority and responsibility is delegated only after a full training course at the Tucson Police Academy. Tucson City Code, Sec. 20–11.1. A Parks Guard is considered a peace officer with authority to investigate and make arrests within their jurisdiction. Tucson City Code, Sec. 20–11.-3. Although not affiliated with the Tucson Police Department in any official capacity, Tucson City Code, Sec. 20–11.4, it is clear that Mills held a special status resulting from his training, position and power. Despite his limited jurisdiction, he occupied a position of trust and confidence in the public eye.

It may be fairly implied that Mills knew that his conduct would furnish grounds for discharge. Undoubtedly, a reasonable special policeman under the circumstances would certainly believe that such conduct was prohibited. Furthermore, the testimony before the Commission showed that appellee reacted in an uncontrollable and aggressive manner when provoked and under pressure, an undesirable characteristic for a law enforcement officer. He thus posed a potential danger to the public which fully justified the revocation of his status as a special patrolman. In our view, the facts elicited at the hearing demonstrated a rational basis for the Commission's conclusion.[3] It appears that the superior court, after first erring in its determination of what may constitute just cause, proceeded to compound the error by finding:

". . . that after the fact of the revocation by Chief Gilkinson, other matters have been entered into this case that quite probably and according to the record had no bearing upon Chief Gilkinson's decision to revoke Mr. Mills' com-

2. We note that the incidents in question appeared to have arisen as a result of marital problems Mills was having at the time.

3. We note, and appellants admit, that there unquestionably existed contradictions in certain testimony, and competent evidence existed to support both positions before the Commis-

sion. However, the Civil Service Commission, as the hearing body, had the opportunity to witness the demeanor and evaluate the credibility of each witness. As was noted above, the touchstone of preponderance of the evidence is the capacity of submitted testimony to enforce belief on the arbiter. *Hewett v. Industrial Commission, supra.*

mission. One would have to conjecture and speculate that this was a situation that brought scandal to the service."

It was the court's position that Gilkinson had based the suspension on one specific incident.

We have reviewed the transcript and find that Chief Gilkinson's testimony is susceptible to several interpretations. It is apparent that he could not only have been referring to one specific incident, but might well have been referring to the series of incidents leading up to the suspension of Mills' credentials, culminating with the last incident mentioned in the specifications.[4]

Finally, we reject appellee's cross-assertion that appellants were guilty of laches for failure to render a written ruling after the second hearing. The defense of laches has been defined as an unexcused delay in asserting rights during a period of time in which adverse rights have been acquired under circumstances that make it inequitable to displace such adverse rights for the benefit of those who are bound by the delay. *Grimes v. Carroll*, 217 Ark. 210, 229 S.W.2d 668 (1950). We are unable to perceive the applicability of the doctrine of laches to the asserted failure.

The judgment is reversed with directions to enter judgment in favor of appellants.

HATHAWAY and FROEB, JJ., concur.

---

4. One reason given by Gilkinson for revocation, i. e., failure to co-operate with police regulations, was invalid as Mills was not an employee of the Tucson Police Department.