593 P.2d 679

Leonard Glenn ROBERTS, Appellant,

v.

The CITY OF TUCSON, the City of Tucson Civil Service Commission, Paul Miner, Personnel Director for the City of Tucson, the City of Tucson Parks & Recreation Department, Gene C. Reid, Department Head for the City of Tucson Parks & Recreation Department, and James Ronstadt, Head of the Recreation Division for the City of Tucson Parks & Recreation Department, Appellees.

No. 2 CA–CIV 2800.

Court of Appeals of Arizona, Division 2.

June 15, 1978.

Rehearing Denied Aug. 8, 1978.

Review Granted Sept. 19, 1978.

Robert J. Hooker, Tucson, for appellant.

Frederick S. Dean, Tucson City Atty. by Thomas J. Wilson, Asst. City Atty., Tucson, for appellees.

## OPINION

HOWARD, Judge.

Appellant was recreation administrator in the Parks & Recreation Department of the City of Tucson and a permanent employee under the city's civil service system. In February 1976, he was informed by his immediate supervisor and the department head that due to his performance and failure to follow and implement departmental policies, his termination was being considered. Subsequently an agreement was reached between appellant and the department head wherein appellant was to submit his resignation effective on May 31, 1976, in exchange for the promise by his immediate supervisor and the department head that the resignation would not be processed until May 1, 1976, and the furnishing of a favorable letter of recommendation by the department head.

Appellant submitted his resignation, but when it became clear to him that no letter of recommendation was going to be furnished he withdrew his resignation on May 3. As soon as the department head discovered that the resignation was withdrawn, appellant was terminated effective May 4. The notice of termination which was given to appellant on May 3 had attached to it 12 reasons for the discharge.

On May 11, 1976, appellant filed with the Civil Service Commission a notice of appeal which requested a hearing for the purpose of determining whether petitioner was terminated with cause. The commission set the matter for hearing on June 21. However, on June 3 a motion to continue the hearing was filed by the city for the reason that the appellant's immediate supervisor, James Ronstadt, assistant director of the Parks & Recreation Department, an essential witness, would be out of the city attending a seminar. The commission considered the motion and the appellant's opposition and granted the continuance on June 10.

Appellant then filed a special action along with a temporary restraining order in the Pima County Superior Court on June 16, 1976. In the superior court action, appellant sought his immediate reinstatement

to the position of recreation administrator and the payment to him of all back pay and benefits.

The matters were heard by the superior court on June 18 and the trial court ruled that the commission should hear the termination within 30 days from June 18 and should review whether the grounds for termination were set forth with sufficient specificity. All other relief was denied. The commission complied with the court's order. Upon review of the grounds for discharge provided in the notice of termination, the commission ordered that further specificity be provided for each of the 12 grounds. Additional delineation of each of the grounds for discharge was provided to the appellant on July 2. Appellant's appeal was then heard by the commission commencing July 8, and continuing on August 4, 5 and 6 and concluding on August 9. Upon the conclusion of the hearing, the Civil Service Commission upheld appellant's termination. Appellant then filed a special action in the superior court which denied him relief.

Appellant first contends that his immediate termination was unlawful since it violated Rule XI, Sec. 2 of the Tucson Civil Service Commission Rules and Regulations. This rule states:

"An appointing officer may for just cause suspend without pay for periods in excess of the number of days specified in Section 1 above [ten days], demote or reduce in pay or position, or discharge a permanent employee under his jurisdiction only provided he furnishes such employee and the Commission with a written notice and reasons therefor. *Such notice shall be on a form supplied by the Director and shall state the effective date of such suspension, demotion, or reduction in pay or position, or discharge and clearly set forth the specific act or acts or omissions thereof which constitute cause for the action of the appointing officer.* Such form shall inform the employee of his right of appeal to the Commission in accordance with Rule XII, Section 4. *Pending the filing and hearing of charges*

*intended to effect the discharge of a permanent employee, an appointing officer may, upon written notice thereof to the employee and the Commission, suspend such employee without pay.*" (Emphasis added)

■ Appellant contends that under the rule he could not have been immediately discharged but that, instead, the most the city could do was suspend him without pay until such time as his discharge was approved by the commission. We do not agree. The rule provides for a procedure by which an appointing officer, who has made a decision to discharge an employee, but has not completed the preparations and notice of termination and specifications for the grounds for the discharge, may remove the employee from the work force through the process of suspension. It does not mean that an employee cannot be discharged prior to the hearing of an appeal by the commission.

■ Appellant next contends that he was denied his constitutional right to due process under the Fifth and Fourteenth Amendments of the United States Constitution because he was not given a pre-termination hearing. Since appellant can only be discharged for cause, he has a property interest in continuing employment which is constitutionally protected. *City of Flagstaff v. Superior Court of the State of Arizona in and for the County of Coconino*, 116 Ariz. 382, 569 P.2d 812 (1977). The seminal case dealing with the necessity of a pre-termination hearing when government benefits are involved is *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) where the issue was whether a welfare recipient could have his payments terminated without a pre-termination hearing even though a post-termination hearing was available. The Court in *Goldberg* quoted from the district court opinion in *Kelly v. Wyman*, 294 F.Supp. 893 (1968):

"While post-termination review is relevant, there is one overpowering fact which controls here. By hypothesis, a welfare recipient is destitute, without funds or assets. * * * Suffice it to

say that to cut off a welfare recipient in the face of . . . 'brutal need' without a prior hearing of some sort is unconscionable, unless overwhelming considerations justify it." 294 F.Supp. at 899–900. The Court in *Goldberg* further focused on the plight of the welfare recipient when it stated:

"It is true, of course, that some governmental benefits may be administratively terminated without affording the recipient a pre-termination evidentiary hearing. But we agree with the District Court that when welfare is discontinued, only a pre-termination evidentiary hearing provides the recipient with procedural due process. [citation omitted] For qualified recipients, welfare provides the means to obtain essential food, clothing, housing, and medical care. [citation omitted] Thus the crucial factor in this context—a factor not present in the case of the blacklisted government contractor, the discharged government employee, the taxpayer denied a tax exemption, or virtually anyone else whose governmental entitlements are ended—is that termination of aid pending resolution of a controversy over eligibility may deprive an *eligible* recipient of the very means by which he live while he waits. Since he lacks independent resources, his situation becomes immediately desperate. His need to concentrate upon finding the means for daily subsistence, in turn, adversely affects his ability to seek redress from the welfare bureaucracy."

The Court in *Goldberg* did not agree with the government's argument that the government's interest in conserving fiscal and administrative resources outweighed the recipient's interest in continuing payments. The holding in *Goldberg* is confined to the question of welfare payments. It does indicate, however, that if the interest of the holder of the governmental benefits outweighs any governmental interest, a pre-termination hearing is mandated before those benefits can be terminated.

Comparing the welfare recipient with the discharged governmental employee is patently inappropriate. *Jacobs v. Kunes*, 541 F.2d 222 (9th Cir. 1976) involved the discharge of two permanent employees whose employment was terminated because they refused to obey an order to trim the length of their hair. The Court held that these two permanent employees could be deprived of their pay without a pre-termination hearing, provided that upon the completion of the post-termination hearing, it was possible to award back pay should it be determined that they could not be discharged.[1]

In *City of Flagstaff v. Superior Court*, supra, our Supreme Court stated:

"We believe that *Jacobs v. Kunes*, supra, holds that as long as a meaningful post-termination hearing is held and the employee has a chance to recover back salary if his termination is found to be unlawful, a person may be discharged without hearing when the interest of the employer indicates *this is necessary.*" (Emphasis added) 569 P.2d at 814.

This language is before us a second time. See *Montes v. Lininger*, 119 Ariz. 174, 580 P.2d 6 (1978). The difficulty with the foregoing language can be seen when we consider appellant's argument. He contends that since he was given from February 1976 until May 1976 to resign, his immediate discharge on May 4 after he withdrew his resignation was not necessary and, therefore, a pre-termination hearing was required.

We believe that our Supreme Court in setting forth the holding in *Jacobs v. Kunes*, supra, must have meant that a person may be discharged without a hearing when there is *cause* for his discharge and provided that he can receive back pay, since that is the holding in *Jacobs v. Kunes*, supra. Going back to the Supreme Court's decision in *Goldberg*, it is incumbent upon the discharged employee to show that his interest in continued governmental pay-

---

1. Appellant here was entitled to back pay if the commission had decided he should not have been discharged.

ments outweighs any governmental interest in discharging him without a pre-termination hearing. When an employee is discharged for cause, the governmental interest is established. Appellant's interest in the continuation of his wages does not outweigh the governmental interest and therefore no pre-termination hearing was necessary since appellant was entitled to a prompt and meaningful post-termination hearing and restoration of back pay should the commission decide that he was wrongfully discharged.

Pointing to the above-quoted language of *City of Flagstaff v. Superior Court,* supra, appellant contends that a pre-termination hearing was necessary because he was not given a prompt termination hearing. The Civil Service Commission Rules and Regulations require a hearing within 30 days from the date of the filing of the appeal and a decision within 45 days from the date of termination.

■ Since the post-termination hearing was not commenced until July 8, 1976, appellant, citing *City of Flagstaff v. Superior Court,* supra, argues that a pre-termination hearing was necessary, or at least he was entitled to back pay for the time period between the time set by the rules and the time when the hearing was held. We do not agree. The city's rules do provide for a prompt post-termination hearing. When appellant was discharged, it was with the knowledge on the part of the city that the rules provided for such hearing. How was the city to know that it would not be heard within the 30 days, thus requiring a pre-termination hearing? We do not believe that the fact that there is delay in the post-termination hearing operates ex post facto to require a pre-termination hearing. Nor do we believe that the delay justifies an award of back pay during the delay.

Appellant next contends that his termination was invalid because the notice given by the city failed to meet the specificity requirements in Rule XI, Sec. 2 of the Civil Service Commission Rules and Regulations. He attempts to bootstrap this argument by pointing out the fact that the commission

later required the city to further amplify the reasons for his discharge. The notice of termination listed 12 reasons for discharge as follows:

"1. Failure to follow directions—Meeting attendance by Recreation Superintendent. 4/5/76.

2. Not following directions—verbal directions in setting up ball field use for Spring & Summer of 1976.

3. Outside Correspondence—Committing City of Parks & Recreation Department without discussion with Director. Malsheim Music Society. November 1975 and December 1975.

4. Al Hollis—Discrimination—Failure to follow directions November 1975 & December 1975.

5. Lack of concern for accountability of fixed asset inventory under his control—October 1975.

6. Failure to follow directions from Assistant Director—Lapiadary [sic] Equipment August & September 1975.

7. Improper directions of Coordinator concerning After School Programs, Flowing Wells School District—Fall 1975.

8. Failure to follow orders both verbal and written—YMCA—April 22, 1975.

9. Failure to follow verbal orders—Mirasol—April 11, & 14, 1975.

10. Non-cooperation with Pima County Parks and Recreation staff in direct conflict with City Parks and Recreation Director's direction.

11. Loss of R.S.P. Funds from lack of proper administrating of that program by the Recreation Superintendent (Mr. Roberts).

12. Failure to follow Director's direction regarding vacation, leave, absence from the office and hiring, etc."

■ In Civil Service Commission of the *City of Tucson v. Mills,* 23 Ariz.App. 499, 534 P.2d 430 (1975) we discussed the purpose of the specificity requirement in the rules. We stated there that the notice must contain sufficient specification of the grounds in order to inform the employee sufficiently to enable him to prepare his

**130**

explanation or defense. The charges must be specific as to time, place and the nature of the offense charged. Generic terms like "incompetency", "unfitness", and like statements are insufficient. Mere general statements of rules violated, and general averment as to acts of misconduct and the like, without giving specific details, are insufficient to warrant a discharge.

 Assuming arguendo, that the initial notice was deficient, such deficiency was cured by the commission when it requested an amended statement of the charges. Lastly, appellant attacks the findings of the Civil Service Commission on two grounds.

 The decision and findings of fact of the Civil Service Commission contain, inter alia, the following:

"Individually, none of the twelve allegations listed as just cause for termination would have constituted just cause sufficient to sustain Mr. Roberts' discharge; however, collectively the allegations and the evidence supporting them indicated and the Civil Service Commission finds that there was a pattern of problem areas and that Mr. Roberts failed or refused to coordinate his views and conduct with the policies of the Parks and Recreation Department and that Mr. Roberts failed or refused to properly exercise discretion and follow the directives of his superiors in the Department."

Appellant contends that the foregoing conclusion precludes the commission from finding just cause for termination since it must find that each particular allegation in and of itself provides sufficient cause for termination. We do not agree. Particular conduct which may not be grounds for termination, if taken individually, can provide just cause for termination when considered as a whole.

 Appellant contends that there was a fatal variance between the findings and the charges. We have examined the findings of fact made by the commission and find that appellant's assertion is more of a quibble over language than one of substance and is without merit.

 Appellant's last contention is that the evidence did not support the findings of the commission. We do not agree. There was ample evidence to support the decision of the commission.

Affirmed.

RICHMOND, C. J., and HATHAWAY, J., concur.