791 P.2d 1053

**Jason WILLIAMS,**
**Plaintiff/Appellee/Cross–Appellant,**

v.

**PIMA COUNTY; the Pima County Merit System Commission; and Clarence Dupnik, Sheriff of Pima County, Defendants/Appellants/Cross–Appellees.**

**No. 2 CA–CV 88–0383.**

Court of Appeals of Arizona,
Division 2, Department B.

Dec. 14, 1989.

Reconsideration Denied Jan. 23, 1990.

Review Denied June 19, 1990.*

* Feldman, V.C.J., of the Supreme Court, voted to grant review as to Issue B.

Risner & Graham by Kenneth K. Graham, Tucson, for plaintiff/appellee/cross-appellant.

Corey & Farrell, P.C. by Brenda S. Cook, Barry M. Corey and Darlene Millar–Espinosa, Tucson, for defendant/appellant/cross-appellee Pima County Merit System Com'n.

Stephen D. Neely, Pima Co. Atty. by Michael P. Callahan, Tucson, for defendants/appellants/cross-appellees Pima County and Dupnik.

## OPINION

LACAGNINA, Judge.

The Pima County Merit System Commission, Pima County and Clarence Dupnik, Pima County Sheriff, appeal from a judgment of the superior court reversing the termination of Jason Williams, a corrections officer employed by the Pima County Sheriff's Office, and ordering his reinstatement with back pay. After a court-ordered hearing, the commission awarded back pay mitigation damages and interest in the amount of $59,235.65, and the trial court entered judgment for that amount, together with costs and interest until paid. Williams has cross-appealed claiming the monetary judgment was insufficient.

We reverse the judgment of the trial court reinstating Williams and ordering payment of damages for the following reasons:

1. There was sufficient evidence to support the findings and decision of the Pima County Merit System Commission to uphold Williams' termination.

2. Williams' participation in the investigation of allegations made against him satisfied any *Loudermill*[1] pretermination requirements.

3. Williams' refusal to answer his employer's questions, which answers could not be used against him in criminal proceedings, was a sufficient ground to support his dismissal.

4. Williams was not entitled to the assistance of counsel during an interview and investigation by his employer.

---

1. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).

## FACTS AND PROCEDURAL BACKGROUND

Jason Williams was hired by the Pima County Jail as a corrections officer in October 1979. An internal affairs investigation into incidents which occurred on May 13 and August 5, 1982, involving young women motorists who were stopped late at night by a man posing as a law enforcement officer, led to the issuance of a search warrant for Williams' residence. As a result of the search of Williams' residence, which revealed many weapons, court records and booking slips, on August 19, 1982, Williams was placed on administrative leave pending an investigation by the Pima County Sheriff's Department.

On September 8, 1982, an internal affairs investigator conducted a tape-recorded interview with Williams. Williams' attorney was present during a discussion of the scope of the interview and the consequences of his refusal to answer questions. Williams was advised that his attorney could not be present when he was questioned about the May 13 and August 5, 1982 incidents and the department records found at his residence. Williams and his attorney were told that the answers given by Williams to questions asked during the interview would not be used against him in any criminal proceedings, but that his employment could be terminated for refusing to answer. Williams refused to answer any questions regarding the May and August incidents by invoking his fifth amendment right to remain silent.

On September 13, 1982, Williams was given written notice of his termination based on his refusal to answer questions during the internal affairs investigation, the possession of booking records and other documents at his residence and information received by the department indicating that Williams was involved in the May and August incidents. On October 21 and 27, 1982, a hearing was conducted by a hearing officer upon Williams' appeal to the Pima County Merit System Commission. Williams appeared with his attorney and testified. Parts of the reporter's transcript of these hearings were destroyed by acci-

dents in 1983 and 1984. The hearing officer prepared and submitted to the commission a report containing a summary of all of the testimony which concluded that Williams was properly terminated and recommended that his appeal be dismissed. On January 25, 1983, the commission decided in accordance with the hearing officer's report and conclusions that Williams' appeal should be dismissed. Review by the superior court of the commission's decision was based upon the record, the file, exhibits and the hearing officer's report and findings.

## STANDARD OF REVIEW

Williams' complaint to the superior court was pursuant to A.R.S. §§ 12–901 through 12–914 for review of the action taken by the commission. If there is substantial evidence in the record to support the commission's decision, the trial court must affirm. *Taylor v. Arizona Law Enforcement Merit System Council,* 152 Ariz. 200, 731 P.2d 95 (App.1986); *DeGroot v. Arizona Racing Commission,* 141 Ariz. 331, 686 P.2d 1301 (App.1984); *Petras v. Arizona State Liquor Board,* 129 Ariz. 449, 631 P.2d 1107 (App.1981).

On appeal, the trial court may not reweigh the evidence presented to the commission. *See Arizona Board of Regents v. Superior Court,* 106 Ariz. 430, 477 P.2d 520 (1970). In addition, if two inconsistent factual conclusions can be supported by the record, then there is substantial evidence to support an administrative decision that elects either conclusion. *Webster v. State Board of Regents,* 123 Ariz. 363, 599 P.2d 816 (App.1979).

## POSSESSION OF JAIL RECORDS

■ The trial court erroneously found from the record that Williams' possession of the booking records and other documents was not a violation of department rules, "since there was no evidence that [Williams] revealed any 'official business' of the Pima County Sheriff's Department, or that [Williams] divulged any criminal records, or that [Williams] used, utilized, converted, copied or distributed for person-

al use departmental records." The trial court also found that even if "some strained construction" of the rules could be considered a violation, it did not justify termination. The evidence from which these findings were made was disputed at Williams' hearing. The trial court on review of the commission's action has no authority to make an independent finding of fact and is required only to search the record to determine if evidence was presented which would support the commission's finding that departmental rules were broken.

Williams admitted he had booking slips containing personal information concerning inmates and photos of prisoners just lying around his home, a home shared with others, for no reason at all. He admitted he did not take them home as part of his official duties and did not use them for duty-related work at home. His admissions, together with conflicting testimony regarding the disposal of booking records by other department employees, was sufficient to sustain the hearing officer's conclusion that departmental rules were broken, and the commission's action affirming Williams' termination based on the hearing officer's findings and conclusions was not arbitrary. *Arizona Board of Regents v. Superior Court, supra; Taylor v. Arizona Law Enforcement Merit System Council, supra; DeGroot v. Arizona Racing Commission, supra; Petras v. Arizona State Liquor Board, supra.* The trial court's finding and conclusion that even if Williams violated the rules and regulations related to possession of department documents, the violations would not justify termination, was a finding of fact precluded by the case law governing the standard of review by the superior court on appeals from decisions of an administrative agency.

## REFUSAL TO ANSWER QUESTIONS

■ Williams was terminated because he refused to answer questions during an internal affairs investigation. The record is clear that he knew he would be fired for not answering the questions. He invoked the fifth amendment, even though he was advised that his answers would not be used against him in criminal proceedings. The trial court's conclusion that "[p]laintiff may not be fired from his job in compliance with due process of law for exercising his Fifth Amendment rights against self incrimination without a properly authorized grant of immunity" is erroneous. *Rivera v. City of Douglas,* 132 Ariz. 117, 121, 644 P.2d 271, 275 (App.1982); *Eshelman v. Blubaum,* 114 Ariz. 376, 379, 560 P.2d 1283, 1286 (App.1977).

As an employee of the sheriff's department, Williams was required to conduct himself in a manner reflecting favorably on the department, both on and off duty. The investigation into allegations that an employee may have been impersonating a law enforcement officer and assaulting young women concerned conduct that violated department rules and justified the questioning of Williams about his off-duty conduct. *See City of Tucson v. Mills,* 114 Ariz. 107, 112, 559 P.2d 663, 668 (App.1976). In this case, his off-duty conduct was related to his job performance and, therefore, the proper subject of inquiry.

The trial court correctly concluded that at any criminal trial in which Williams' statements were offered against him, the statements would have been suppressed because they were obtained by compulsion. *Garrity v. State of New Jersey,* 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967). However, that fact is irrelevant to his termination. A grant of immunity by a proper judicial officer was not a prerequisite to his employer's right to require that he answer the employer's questions during the investigation. The commission properly concluded, supported by substantial evidence, that Williams' employment should be terminated for his refusal to answer questions and cooperate in the investigation. In addition, we disagree with the special concurrence that Williams was terminated because he invoked the fifth amendment. His silence, in response to his employer's legitimate inquiry concerning his off-duty conduct relating to job performance, was the reason for his termination. He would likewise have been ter-

minated if he had merely refused to answer without invoking the fifth amendment.

## DUE PROCESS UNDER LOUDERMILL

■ The trial court concluded that Williams was entitled to a pre-termination hearing as mandated by *Cleveland Board of Education v. Loudermill, supra. Loudermill* does not require an adversarial hearing but merely notice of the reasons for discharge and some reasonable format and opportunity to dispute the accusations before termination. In other words, all *Loudermill* requires is an opportunity for an employee to give his side of the story before his employer reaches the decision to fire him. *Zavala v. Arizona State Personnel Board,* 159 Ariz. 256, 766 P.2d 608 (App.1987). The facts of this case meet all of the *Loudermill* requirements. Williams knew about the charge of mishandling records and gave his side of the story to the investigator. He knew that if he refused to answer questions about his off-duty conduct involving the impersonation of a law enforcement officer and the assaults, he would be fired. The due process notice requirements were met. He waived the opportunity to give his side of the story and any claim of lack of due process when he refused to answer his employer's questions. The September 8, 1982 interview met the *Loudermill* due process requirements. As stated by the Sixth Circuit in the second *Loudermill* case, *Loudermill v. Cleveland Board of Education,* 844 F.2d 304, 312 (6th Cir.), *cert. denied,* 488 U.S. 941, 109 S.Ct. 363, 102 L.Ed.2d 353 (1988):

> [C]ourts construing the Supreme Court's language in *Loudermill* have required only the barest of a pretermination procedure, especially when an elaborate posttermination procedure is in place. *See, e.g., Buschi v. Kirven,* 775 F.2d 1240, 1256 (4th Cir.1985); *Kelly v. Smith,* 764 F.2d 1412, 1414 (11th Cir. 1985); *Brasslett v. Cota,* 761 F.2d 827, 836 (1st Cir.1985). This court has also decided such questions of procedural due process requiring only the minimum of procedures. *See Gurish v. McFaul,* 801 F.2d 225, 227–28 (6th Cir.1986) (indicating that an interview prior to termination

by one not the ultimate decision-maker is enough to satisfy due process); *Lee v. Western Reserve Psychiatric Habilitation Center,* 747 F.2d 1062, 1068–69 (6th Cir.1984) (all that is required is an "abbreviated opportunity to respond," and, under this standard, a letter informing one of the charges and an interview to explain them is sufficient). *See also Deryck v. Akron City School Dist.,* 633 F.Supp. 1180, 1183 (N.D. Ohio 1986), *aff'd without opinion,* 820 F.2d 405 (6th Cir.1987).

While it might be tempting to make this test harder and require that a meeting be with the one actually empowered with the authority to fire, the courts have not construed procedural due process to merit such a requirement.

## RIGHT TO COUNSEL

■ The trial court also erroneously concluded that Williams' right to counsel under the sixth and fourteenth amendments to the United States Constitution and Article 2, § 24 of the Arizona Constitution were violated when he was required to answer his employer's questions in the absence of his attorney. The sixth amendment to the United States Constitution and Article 2, § 24 of the Arizona Constitution apply only to criminal proceedings. *State v. Superior Court,* 125 Ariz. 370, 373, 609 P.2d 1070, 1073 (App.1980).

■ In the context of employer/employee relationships, the fourteenth amendment does not confer on an employee the right to counsel at a pretermination interview with his employer. Pretermination interviews which are informal should not unduly intrude on the employer's right to terminate an unsatisfactory employee. *Loudermill, supra,* 470 U.S. at 546, 105 S.Ct. at 1495; *cf. Wilson v. Swing,* 463 F.Supp. 555 (M.D. N.C.1978). Williams did have an attorney at his formal hearing in compliance with due process requirements.

■ Issues raised in the briefs but not addressed in this decision either have no merit or were waived by the failure to object at the hearing. As part of the crimi-

 

nal investigation, the police obtained a subpoena and searched Williams' home, recovering the jail records mentioned above. Dupnik concedes that Williams and his lawyer made an agreement with Dupnik's lawyer that information from the criminal investigation would not be offered as a basis for Williams' termination. The trial court found the agreement was breached by use of the jail records obtained in the search of Williams' home. We disagree. Williams testified at length at the hearing, without objection, as to the jail records. Neither Williams nor his lawyer ever objected that any questions regarding those records violated any agreement. The hearing itself is proof of what the real agreement was—that Dupnik would not use any information concerning the incidents which occurred on May 13 and August 5 as a basis for Williams' termination. In fact, Williams took the fifth amendment as to those incidents.

In any event, any objection to an alleged technical violation of the agreement by the use of the records obtained from the search, as construed by Williams on appeal, was waived by his extensive testimony concerning the records. The hearing officer could not decide an issue not presented to him, nor can we review such an issue. *DeGroot v. Arizona Racing Comm'n, supra.* Absent consideration of the records, we can still sustain the commission's decision based solely upon Williams' testimony.

This decision reverses the judgment of the trial court setting aside Williams' termination; therefore, we need not address the cross-appeal involving issues of the proper award for damages because Williams was properly terminated and not entitled to any damages. In addition, the trial court had no authority to reinstate Williams; its authority was limited to remanding the case to the commission for further proceedings consistent with its opinion. *Zavala v. Arizona State Personnel Board, supra; City of Tucson v. Mills, supra.*

The judgment of the trial court is reversed. The case is remanded for entry of judgment in favor of Pima County, Pima County Merit System Commission and Dupnik, affirming Williams' termination of employment.

FERNANDEZ, C.J., concurs.

LIVERMORE, Presiding Judge, specially concurring.

Because a public employee may be dismissed for refusing to answer questions on the basis of the self-incrimination privilege only if those questions specifically, directly, and narrowly relate to the performance of his official duties, *Gardner v. Broderick,* 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (1968), and because off-duty criminality, though undoubtedly embarrassing to the public employer, does not meet that test, I do not believe that Williams can be discharged for his refusal to answer questions. I concur because his possession of jail records provides an independent basis for discharge.