713 P.2d 309

Charles W. MONTOYA,
Plàintiff-Appellant,

v.

The LAW ENFORCEMENT MERIT SYS-
TEM COUNCIL and Wayne E. Schneid-
er, John R. Carney and Robert Stuchen,
Chairman, Secretary and Member
thereof, Defendants-Appellees.

No. 1 CA–CIV 7501.

Court of Appeals of Arizona,
Division 1, Department D.

Sept. 3, 1985.

Motion for Reconsideration
Oct. 31, 1985.

Richard J. Riley, Sierra Vista, for plain-
tiff-appellant.

Robert K. Corbin, Atty. Gen. by Evelyn
R. Eppstein, Asst. Atty. Gen., Phoenix, for
defendants-appellees.

## OPINION

MEYERSON, Presiding Judge.

Charles W. Montoya was hired in 1981 as
an officer trainee by the Arizona Depart-
ment of Public Safety. In May, 1983, he
was discharged following two incidents in-
volving "suspicion" as to his "honesty in
the removal of certain monies from the
coffee fund." Pursuant to Department of
Public Safety rules, Montoya's appointment
could be terminated at any time, with no
right of appeal from the termination. Mon-

toya filed suit contending he was entitled to a hearing before the Law Enforcement Merit System Council (Council).[1] Montoya raised a number of theories before the trial court which he now raises on appeal.[2] The trial court ruled in favor of the state. We hold that the state violated Montoya's right to due process of law and remand this case with directions that the trial court enter judgment allowing Montoya a post-termination hearing to clear his name and reputation.

## I. LIBERTY INTEREST

■ Preliminarily, we reject Montoya's contention that he has a property interest in his employment.

A persons's interest in a benefit is a 'property' interest for due process purposes if there are rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing.

*Perry v. Sindermann*, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570, 579 (1972). We therefore look to the regulations governing Montoya's employment to determine whether any rule supports his claim of entitlement to continued employment.

As a limited term employee, Montoya was hired pursuant to R13–5–31. Subsection (C) provides that a "limited-term employee may be separated at any time prior to the expiration of the term for which" he was appointed. It further provides that the "employee has no appeal from the action of the agency head in terminating" his employment. We conclude that by virtue of the rules regulating Montoya's employment, he had no claim of entitlement to continued employment. Montoya therefore had no property interest in his employment

and was thus not entitled to a hearing on this basis. *See Cleveland Board of Educ. v. Loudermill,* — U.S. —, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985).

The discharge of a public employee, however, may implicate the "liberty" interest guaranteed by the due process clause of the fourteenth amendment. The type of liberty interest which would call into play standards of due process was described by the Supreme Court in *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). In *Roth,* an assistant professor at a state university who had no tenure rights to continued employment, was informed that he would not be rehired after the first academic year. The Court found no deprivation of his liberty interest because the university "did not base the nonrenewal of his contract on a charge, for example, that he had been guilty of dishonesty, or immorality." *Id.* at 573, 92 S.Ct. at 2707. Similarly, the Court found that there was no indication that the state, in declining to re-employ the professor, "imposed on him a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities." *Id.*

In *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), the Supreme Court clarified *Roth* by requiring a concrete alteration of a "status," in addition to an injury to reputation, before a liberty interest will be recognized. In *Paul,* the plaintiff challenged the circulation by local police of a flyer describing "active shoplifters" bearing the plaintiff's name and picture. The Court held that the plaintiff's charge that the flyer had defamed him, standing alone and apart from any other governmental action with respect to him, did not state a claim for relief. The Court

---

1. The Council is the personnel administration arm of the Department of Public Safety. A.R.S. § 28–235.

2. Montoya additionally argues that (1) he is a special limited term employee, R13–5–31(E), and therefore the "nontenured" status of limited term employees is not applicable to him; (2) the state has violated the equal protection clause of the fourteenth amendment by treating officer trainees differently from other Department of Public Safety employees; (3) R13–5–31(C) conflicts with R13–5–31(A); and (4) the state is estopped from denying him a hearing because of certain representations made to him by the business manager of the Council. We find no merit to these contentions and summarily reject them.

indicated, however, that the "other governmental action" required to elevate the plaintiff's claim to the level of a due process violation would include a loss of government employment or a foreclosure of future government employment opportunities. *See id.* at 709, 96 S.Ct. at 1164. "In other words, *Paul* explicitly recognized that the combination of government defamation plus the failure to rehire or the discharge of a government employee states a liberty interest claim even if the discharge itself deprives the employee of no property interest protected by the fifth or fourteenth amendments." *Doe v. United States Department of Justice*, 753 F.2d 1092, 1106–1107 (D.C.Cir.1985). *See Owen v. City of Independence*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980).

■ Although the Council does not dispute the foregoing principles, it contends that they are not applicable in the present case because neither it nor the Department of Public Safety publicized the reasons for Montoya's discharge.[3] *Cato v. Collins*, 539 F.2d 656, 660 (8th Cir.1976). Although the private oral communication of reasons warranting an employee's discharge does not rise to the level of a stigma, *Bishop v. Wood*, 426 U.S. 341, 348, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976), the stigma requirement is satisfied where charges of misconduct are included in a personnel file. *Harper v. Blumenthal*, 478 F.Supp. 176, 186 (D.D.C. 1979); *Lubey v. City and County of San Francisco*, 98 Cal.App.3d 340, 347, 159 Cal. Rptr. 440, 444 (1979).

■ In this case, Montoya was accused of dishonesty and breach of integrity concerning two incidents purportedly involving his removal of money from a coffee fund. The accusation that Montoya stole funds unquestionably impeached his good name, reputation, honor or integrity. This governmental defamation is tied to an alteration of his status by virtue of the fact that he was discharged from employment because of his alleged dishonesty.[4] We therefore conclude that the requirements of *Paul v. Davis* have been met here and thus hold that Montoya has been deprived of a liberty interest in violation of the due process clause of the fourteenth amendment. And although the state did not "publicly" announce these allegations, the stigmatizing consequence exists because the charges were made part of Montoya's personnel record.

Our conclusion is supported by the decision of the Arizona Supreme Court in *Smith v. Pima County Law Enforcement Council*, 113 Ariz. 154, 548 P.2d 1151 (1976). Smith, a probationary employee was denied permanent status because, among other things, he was guilty of conduct unbecoming an officer and failed to follow regulations regarding outside employment. *Id.* at 158, 548 P.2d at 1155. The Supreme Court concluded that although Smith did not have the right to retention and permanent status (and therefore no property interest in his employment) he nevertheless did have a right to a hearing to clear his good name noting that the charges brought against him "will undoubtedly have considerable negative influence upon any agency to which he might

---

3. The Council argues that Montoya actually publicized the allegations of misconduct through the filing of this lawsuit. The Department of Public Safety, in writing, accused Montoya of dishonesty. This allegation is now part of his personnel record. It is ludicrous to contend that a government employee forfeits his right to vindicate his good name and reputation by the initiation of legal action to compel the state to provide him with a hearing to contest the charges against him. The Council has cited no authority to support this argument and we are aware of none.

4. During the administrative process, the state offered Montoya the opportunity to resign in lieu of discharge. This offer does not affect our conclusion. The essence of Montoya's due process right is the opportunity to clear his name and reputation under circumstances where governmental action has directly impaired his livelihood. A forced resignation has the same devastating impact upon any employee as would a discharge from the standpoint of the immediate alteration of his "status." Thus, even if Montoya had elected to resign, such a constructive discharge would not deprive him of the right to clear his name.

apply for a law enforcement position in the future." *Id.,* 548 P.2d at 1155.

## II. HEARING

 Because Montoya has no property interest in his job, the sole purpose of the hearing which he has requested is to provide him an opportunity to refute the charges against him and clear his name. *See Codd v. Velger,* 429 U.S. 624, 727, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977). Although a pretermination hearing is required prior to the discharge of an employee who has a constitutionally protected property interest in his employment, *Cleveland Board of Educ. v. Loudermill,* —— U.S. at ——, 105 S.Ct. at .1493, a post-termination hearing is constitutionally sufficient where a liberty interest is implicated. *See Doe v. United States Department of Justice,* 753 F.2d at 1112–14; *cf. McLeod v. Chilton,* 132 Ariz. 9, 19, 643 P.2d 712, 722 (App.1982).

We decline to elaborate on the precise contours of the name-clearing procedure that the state must provide Montoya because this issue has not been briefed by the parties. We thus leave that issue to resolution by the trial court under the principles enunciated in *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

For the foregoing reasons, the judgment of the trial court is reversed. This matter is remanded for further proceedings consistent with this opinion.

GRANT and HAIRE, JJ., concur.