766 P.2d 608

**Sostemo R. ZAVALA,**
**Plaintiff-Appellant,**

v.

**ARIZONA STATE PERSONNEL BOARD; Everett W. Kyle, Esther Tang, Salvador Martinez, Harry Lakin, individually and in their official capacity as members of the Arizona State Personnel Board; James G. Ricketts, individually and in his official capacity as the Director of the State of Arizona Department of Corrections, and the State of Arizona, Defendants-Appellees.**

No. 1 CA–CIV 9015.

Court of Appeals of Arizona,
Division 1, Department A.

Oct. 1, 1987.

Supplemental Opinion on Denial
of Motion for Reconsideration
June 28, 1988.

Review Denied Jan. 17, 1989.

Edward Camacho, Phoenix, for plaintiff-appellant.

Robert K. Corbin, Atty. Gen. by Michael N. Harrison, Asst. Atty. Gen., Phoenix, for defendant-appellee, State of Ariz.

Sundberg & Mousel by Craig L. Mousel, Phoenix, for defendants-appellees, Arizona State Personnel Bd.

## OPINION

FIDEL, Judge.

Appellant Sostemo Zavala was terminated as an employee of the Arizona Department of Corrections (DOC) for sexually harassive and unprofessional behavior. The Arizona State Personnel Board upheld his dismissal. From the superior court's summary judgment affirming the decision of the board, Zavala appeals. Because the DOC failed to honor Zavala's due process right to a pre-termination hearing, we reverse.

In 1981 Zavala was employed as a correctional services officer (CSO) by DOC. In 1982 he was assigned to the Perryville State Prison as a yard worker and as an occasional officer-in-charge (OIC). On March 6, 1984, Zavala received a letter from the Perryville warden, William E. Dodds, suspending him without pay for a period of eighty hours, from March 6 to March 17, 1984, as discipline for "inappropriate language and gestures used in conversations with employees and in front of inmates over the past several months." The warden wrote that Zavala had no right to appeal, but could file a grievance within ten days if he felt the suspension unjust. *See* A.C.R.R. R2–5–404.[1] The warden warned that "[c]ontinued violations of this

---

1. This regulation was renumbered in 1983, and readopted with conforming changes transferring responsibility for direction and control of personnel administration to the Director of Administration effective July 27, 1983. Currently codified at A.C.R.R. R2–45–403, the regulation provides for a grievance procedure for permanent status employees who seek relief from suspension of 80 hours or less, as required by A.R.S. § 41–783.

nature will result in more serious disciplinary action including dismissal from State Service." He did not, however, indicate that the suspension was subject to review by the director of DOC or that the director might increase Zavala's sanction and dismiss him.

Zavala filed no grievance. He chose to accept suspension without protest after the warden verbally advised him to "forget about it" and that "this issue was dead." Zavala relied on the warden's statements, on the language of the letter, and on the advice of his immediate superiors and his wife that "it was just better to let the thing go." "[A]s far as I was concerned," testified Zavala, "the issue, the matter was over. After serving the eighty hour suspension."

Zavala returned to work on March 19, 1984, and was transferred to another unit. He faced no further allegations of misconduct. However, on May 25, 1984, eighty days after the warden's letter of suspension, Zavala received a letter from DOC director James G. Ricketts, rescinding the suspension and dismissing him immediately pursuant to A.R.S. § 41–770. The director detailed as cause for Zavala's dismissal a series of alleged acts and comments toward "at least two female correctional service officers" from "approximately January 1983 through January 1984." These were not supplemental allegations, but simply a more detailed version of the allegations underlying the warden's letter of suspension, based upon the same internal investigation that the warden had acted upon, an investigation completed ninety-nine days before the director's decision. The director summarized Zavala's behavior as "sexually harass[ing]," "totally inappropriate and unprofessional," "vulgar, discordant," and "detrimental to professional working relations." He advised Zavala that his wages would be paid for the period of the now-rescinded suspension and that he had a right to appeal his dismissal to the Board within ten days. *See* A.R.S. § 41–785(A).

Though Zavala had been willing to accept his eighty hour suspension without protest, he appealed his dismissal to the Arizona State Personnel Board. At a full hearing before hearing officer Harold Merkow, Zavala vigorously contested the accusations. The hearing officer concluded that "most of the conduct attributed to appellant [could] be dismissed as mere banter between CSOs," but that "reasonable cause existed ... to discipline appellant for 'sexual harassment'. Appellant's comments to at least two female CSOs went beyond mere 'camaraderie' or joking and, by virtue of the position appellant held as OIC, the comments were inappropriate." However, the hearing officer recommended that the board reverse Zavala's dismissal and reinstate suspension. He stated:

While your undersigned has no quarrel with the proposition advanced by the Department that the Director has the "inherent" authority to review subordinates' decisions relating to discipline and overrule such decisions, your undersigned believes that it was unfair to appellant for the Director to have waited more than two months to conduct such review. Appellant was led to believe, and on the basis of the suspension letter had the right to believe, that he would serve his suspension and that no further action would be taken against him unless there were continued violations.... Your undersigned believes that any review of a disciplinary action by a superior within a department must be accomplished no later than the time within which a grievance is allowed to be filed....

There must be an element of certainty in the discipline procedure used by every State department. Public employees have the right to be treated fairly by their employer and, since this dismissal was brought about more than two months following a suspension for the same allegations, appellant was not treated fairly.

On August 21, 1984, the board adopted the hearing officer's findings concerning the conduct of Zavala, but rejected his recommendations and upheld Zavala's dismissal. Pursuant to A.R.S. § 41–785(D), Zavala sought review in the Superior Court of Maricopa County, where the parties submitted the matter for decision upon the

administrative record and legal memoranda. In granting summary judgment for the appellees and affirming Zavala's dismissal, the court found:

> that there has been no showing that the Plaintiff was ignorant of the fact that the disciplinary action by the Warden was subject to further review by the Director of the Department of Corrections nor that he relied upon the actions of the Warden or other supervisors to his detriment. Also, the record supports the factual findings underlying cause for termination and therefore the Defendants did not act arbitrarily in dismissing Plaintiff.

In a timely appeal to this court, pursuant to A.R.S. § 41-785(E), Zavala argues that the manner of his dismissal violated his due process rights under the fourteenth amendment to the United States Constitution and that the DOC should be estopped from dismissing him in light of his reliance upon representations by his superiors that no further disciplinary action would result if he accepted suspension without protest. He also argues that the record fails to support the board's conclusion that his conduct amounted to sexual harassment or otherwise constituted cause for termination.

### Sufficiency of Evidence

The superior court reviewed the record of Zavala's dismissal pursuant to the Administrative Review Act. A.R.S. § 12-901, et seq. In such matters,

> [t]he scope of the Superior Court's review is limited to deciding whether the administrative action was illegal, arbitrary, capricious, or involved an abuse of discretion.... In reviewing actions of the trial court under the act, appellate courts will only search the record to determine whether the evidence is of a substantial nature to support the lower court's decision.

Schade v. Arizona State Retirement System, 109 Ariz. 396, 398, 510 P.2d 42, 44 (1973) (citations omitted).

■ The accusations concerning Zavala's conduct were the subject of hotly disputed evidence at the administrative hearing. There was substantial evidence from which the factfinder could have found for or against Zavala. On such a record the trial court correctly declined, and we in turn decline, to substitute a reviewer's judgment for that of the fact-finding tribunal. Nor do we substitute our judgment on the question whether suspension or dismissal was a more appropriate response to Zavala's conduct. Instead, we turn to Zavala's challenge to the procedural fairness of his dismissal.

### Procedural Fairness

We would avoid determination of a constitutional issue if we could decide this case on other grounds. See State v. Yslas, 139 Ariz. 60, 676 P.2d 1118 (1984). However, Zavala's due process and estoppel arguments are so intertwined that we cannot resolve the merits without deciding whether he received due process of law.

■ We first dispose of the state's contention that Zavala waived his due process argument on appeal by failing to advance it below. Zavala first raised the issue in his letter of appeal to the board on June 1, 1984, in which he denied the director's allegations and stated, "It is unconscionable that the Department of Corrections could make such accusations without due process." Zavala alleged in his complaint to the superior court that the board's determination was "violative of Plaintiff's constitutional guarantees...." Additionally, Zavala has consistently maintained, in arguing that the state should be estopped from accomplishing a procedurally unjust dismissal, that the state misrepresented the finality of an unprotested suspension, induced him to accept suspension without protest, and thereby denied him a fair and timely opportunity to contest the accusations against him. We find these invocations of due process rights and principles of fundamental fairness sufficient to preserve the constitutional issue on appeal.

■ We next observe that Zavala had permanent status as a state employee and was subject to dismissal only for cause.

As such, Zavala had a property interest in his employment, and the state could not deprive him of that interest without extending him due process of law. *Perry v. Sindermann*, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972); *cf. Montoya v. Law Enforcement Merit System Council*, 148 Ariz. 108, 109, 713 P.2d 309, 310 (App. 1985).

■ Zavala argues that the state denied him due process by imposing two disciplinary actions for one set of deeds. He analogizes to the double jeopardy clause of the fifth amendment and attempts to find in fourteenth amendment due process a restriction against double discipline for protected public employees. We need not determine the validity of this analogy, as Zavala did not suffer double punishment in this case. The director's dismissal letter specifically rescinded the suspension and extended Zavala back pay for the period of suspension. The dismissal, thus, was not a second disciplinary action, but a substitution for the first. In the end Zavala received only one form of discipline for his misconduct—dismissal from employment.

Although we have not concluded our discussion of due process, we turn to Zavala's estoppel argument, which, as we have indicated, is inextricably intertwined with his due process position. The elements of estoppel, as stated in *Darner Motor Sales v. Universal Underwriters Ins. Co.*, 140 Ariz. 383, 394, 682 P.2d 388, 399 (1984) are "conduct by which one ... induces another to believe ... in certain material facts, which inducement results in acts in reliance thereon, justifiably taken, which cause injury...." One who seeks to estop the state must not only prove these elements, but additionally prove that "the government's wrongful conduct threatens to work a serious injustice" and that "the public interest would not be unduly damaged by the imposition of estoppel." *Freightways, Inc. v. Ariz. Corp. Com'n*, 129 Ariz. 245, 248, 630 P.2d 541, 544 (1981).

Zavala argues that he was induced to forego protesting his initial eighty hour suspension by a combination of actions and representations of agents of the state. The warden advised him to forget about filing a grievance to protest suspension and represented that "this issue was dead." The warden's letter represented that "continued violations" of a similar nature would result in "more serious disciplinary action including dismissal...." It thereby implied that more serious discipline would not flow from Zavala's conduct if Zavala accepted suspension and corrected his behavior. Zavala's immediate superiors gave similar advice. These representations collectively are the inducing behavior upon which Zavala claims to have detrimentally relied.

The trial court found no detrimental reliance. This finding separately entails the question of reliance and the question of detriment. We take each of them in turn.

■ The record in our view substantially demonstrates that Zavala relied, and did so reasonably, upon the advice of the warden and his superiors to accept his initial suspension without protest and thereby let the matter die.

Appellees argue that Zavala should have known that the warden's order of suspension, even if unprotested, remained subject to the director's review in light of the director's statutory authority to hire and fire the DOC personnel pursuant to A.R.S. § 41–1604(A). That statute provided:[2]

The director shall:

1. Be responsible for the overall operations and policies of the department....

9. Retain in the employ of the department all employees below the status of a deputy director ... except a person may be removed for cause.

We find this argument unpersuasive for several reasons. First, the personnel rules defined "Director" to include "the Director's designee to whom personnel authority has been delegated." A.C.R.R. R2–

2. A.R.S. § 41–1604 was amended by Laws 1986, Ch. 232, § 104, to delete subsection 9 effective Jan. 1, 1987. For purposes of this case, the unamended statute applies.

5–101(22).[3] This definition could have logically included the warden, who was obviously authorized to impose employee discipline. Second, the ethical code instructed employees to acquaint themselves with numerous statutes relating to employee conduct or discipline, but the listing included no reference to A.R.S. § 41–1604(A). *See* A.C.R.R. R2–5–401.[4] Third, neither the text of A.R.S. § 41–1604(A) nor the personnel rules gave notice that the director could substitute dismissal for his designee's order of suspension where the employee accepted the suspension and permitted the grievance period allotted by the rules to pass.

■ We conclude that Zavala had no notice, nor should he have known, that his acceptance of suspension would not end his disciplinary exposure from the current charges. All notice Zavala received was to the contrary. The warden and director themselves testified that Zavala could reasonably have concluded on the basis of the warden's suspension letter that, in the absence of further violations, he would not be terminated. This concession concludes the point; Zavala relied.

■ The next question is whether Zavala was injured as a consequence of his reliance. The state points out correctly that Zavala offered no evidence at administrative hearing to establish that he was hampered in the preparation of a defense as a result of the delay between the warden's order of suspension and the director's substitute order of dismissal. We find no detriment in this regard.

We find considerable potential for harm, however, in a related aspect of the director's manner of proceeding. When the director reviewed the warden's order of suspension and the investigative report which underlay it, he had the additional fact before him that Zavala had accepted suspension without protest. This acceptance appeared implicitly to concede the validity of the accusations. We are unable to say whether or to what extent this implicit validation of the charges influenced the director's decision to terminate Zavala's employment. We can clearly say, however, that such potential detriment could have been fully dissipated had the DOC only (1) notified Zavala that his dismissal remained a subject of active consideration and (2) extended him the opportunity for a *pretermination* hearing.

■ It is here, in contemplation of these omitted steps, that Zavala's estoppel and due process arguments converge. For the essence of his challenge to the DOC's procedure, sometimes advanced under the rubric of estoppel, and sometimes under the rubric of due process, is that the director ordered his termination without first giving him a chancé to contest the charges against him. Though the DOC offered Zavala an initial opportunity to contest suspension, its agents induced him to forego it. When Zavala weighed the risks and benefits of invoking the state's grievance procedure, he decided to accept suspension to bring the matter to an end. He lacked notice, however, that his acceptance of suspension would not bring it to an end; he lacked notice that, even after his own period to protest suspension had expired, the director reserved the right to heighten his sanction to dismissal; and he lacked the opportunity to weigh in his decision the risk that his failure to protest would be construed as a concession of the charges. Having induced Zavala to forego his opportunity to contest suspension, the DOC changed his punishment to dismissal without providing notice, a chance to contest the charges, and a chance to present reasons why dismissal should not be ordered. These acts were incompatible with due process of law.

The due process rights of a permanent status employee include notice and an opportunity to respond to adverse allegations

---

3. A.C.R.R. R2–5–101, as cited in the briefs, was repealed effective Dec. 31, 1986. The provision relevant here was readopted in the current version as A.C.R.R. R2–5–101(21), effective Dec. 31, 1986.

4. A.C.R.R. R2–5–401 was subsequently repealed effective Dec. 31, 1986.

before the disciplinary act of termination. *See Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494, 503–4 (1985), in which the Supreme Court stated:

We have described "the root requirement" of the Due Process Clause as being "that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest" *Boddie v. Connecticut,* 401 U.S. 371, 379, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971) (emphasis in original); *see Bell v. Burson,* 402 U.S. 535, 542, 91 S.Ct. 1586, 1591, 29 L.Ed.2d 90 (1971). This principle requires "some kind of a hearing" prior to the discharge of an employee who has a constitutionally protected property interest in his employment. *Board of Regents v. Roth,* 408 U.S. [564] at 569–570, 92 S.Ct. [2701], at 2705, [33 L.Ed.2d 548 (1972) ]; *Perry v. Sindermann,* 408 U.S. 593, 599, 92 S.Ct. 2694, 2698, 33 L.Ed.2d 570 (1972).

*See also Montoya v. Law Enforcement Merit System Council,* 148 Ariz. at 111, 713 P.2d at 312. The Supreme Court in *Loudermill* explained the value of a pre-disciplinary hearing:

[W]here there is an entitlement, a prior hearing facilitates the consideration of whether a permissible course of action is also an appropriate one. This is one way in which providing "effective notice and informal hearing permitting the [employee] to give his version of the events will provide a meaningful hedge against erroneous action. At least the [employer] will be alerted to the existence of disputes about facts and arguments about cause and effect.... [H]is discretion will be more informed and we think the risk of error substantially reduced." *Goss v. Lopez,* 419 U.S. 565, 583–584, 95 S.Ct. 729, 740–741, 42 L.Ed.2d 725 (1975).

470 U.S. at 543–544, n. 8, 105 S.Ct. at 1494, n. 8, 84 L.Ed.2d at 505, n. 8. Distinguishing a pre-termination hearing from a post-termination hearing, the court recognized that "the only meaningful opportunity to invoke the discretion of the decisionmaker is likely to be before the termination takes effect." *Id.* at 543, 105 S.Ct. at 1494, 84 L.Ed.2d at 504–505.

We recognize that the obligation to provide a pre-termination hearing does not preclude an employer who "perceives a significant hazard in keeping the employee on the job" from suspending the employee immediately with pay pending the provision of the hearing. *Loudermill,* 470 U.S. at 544–5, 105 S.Ct. at 1495, 84 L.Ed.2d at 505. A.C.R.R. R2–5–402(C)[5] made such a procedure available when Zavala was discharged, but the director did not employ it. Nor do Zavala's post-suspension service without complaint and the director's post-suspension delay in reviewing Zavala's case suggest that Zavala was regarded as a significant hazard on the job. The director did not suspend Zavala with pay pending a pre-termination hearing; he dismissed him, effective immediately, with no pre-termination hearing. The due process violation is plain.

Because the DOC denied Zavala his due process right to a pre-termination hearing, we conclude that his dismissal was invalid and must be set aside. Because the DOC's failure to conduct a pre-termination hearing constitutes a clear basis for decision, we limit our holding to that ground and do not reach a related constitutional issue: the due process validity of the director's delayed review of Zavala's original suspension. However, even though we do not determine when, as a matter of due process, the director should have completed his review, his delay is nonetheless a factor in our disposition.

■ In remanding an employee's dismissal for lack of due process, we consider whether due process can be served by extending the employer the opportunity to recommence dismissal proceedings. In this case, considerable time has passed since the allegations that led to Zavala's dismissal. After receiving an investigative report about those allegations, the warden waited nineteen days to order suspension, showing no urgency to get Zavala off the job.

---

**5.** A.C.R.R. R2–5–402 was subsequently repealed effective Dec. 31, 1986.

Within those nineteen days or within a shortly extended time, the warden could surely have sought the director's advance approval of his proposal to suspend Zavala. Such advanced review would have tendered Zavala a definitive, not a tentative, course of discipline to accept or protest. Here, however, not only was there no advanced review; the director waited eighty days beyond the order of suspension. In the interim Zavala's protest time elapsed, he accepted and completed his suspension, and he served at work upon return without complaint. Now three and one half years further have passed. Due process requires that administrative proceedings leading to dismissal be completed within "a meaningful time." *Loudermill*, 470 U.S. at 547, 105 S.Ct. at 1496, 84 L.Ed.2d at 507. Delay may in and of itself constitute a constitutional violation. *Id.* Under the circumstances detailed above, we would deem it unfair and inconsistent with due process to permit the DOC to recommence dismissal proceedings, long after the fact, based upon the original allegations. Instead the DOC may reinstate the initial, unprotested, disciplinary action of suspension. Subject to that suspension, Zavala must be reinstated as a permanent status employee of DOC, with back pay and benefits retroactive to the date of his dismissal.

The judgment of the superior court is reversed, and the case is remanded for further proceedings consistent with this opinion.

GRANT, P.J., and CONTRERAS, J., concur.

## SUPPLEMENTAL OPINION

■ By motion for reconsideration, appellees object to our application of *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), to invalidate a termination accomplished in 1984, before the *Loudermill* decision was issued. They suggest that, through application of the retroactivity analysis of *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), we should confine the application of *Loud-*ermill to terminations that follow that decision. We do not agree.

The *Chevron* criteria for limiting a civil opinion to prospective application were recently summarized by our supreme court in its supplemental opinion in *Law v. Superior Court*, 157 Ariz. 147, 755 P.2d 1135 (1988):

1. The opinion establishes a new legal principle by overruling clear and reliable precedent or by deciding an issue whose resolution was not foreshadowed;

2. Retroactive application would adversely affect the purpose behind the new rule; and

3. Retroactive application would produce substantially inequitable results.

At 160, 755 P.2d at 1148.

We question, however, whether a lower court should employ these criteria in reckoning the retroactivity of a higher court's opinion. The Second and Sixth Circuit Courts of Appeals do not do so. *See, e.g., Welyczko v. U.S. Air, Inc.*, 733 F.2d 239 (2nd Cir.1984); *Ratliff v. Wellington Exempted Village Schools Board of Education*, 820 F.2d 792 (6th Cir.1987); *Gurish v. McFaul*, 801 F.2d 225 (6th Cir.1986); *Smith v. General Motors Corp.*, 747 F.2d 372, 375 (6th Cir.1984). Rather, as the Sixth Circuit explained in *Gurish*, where it gave *Loudermill* retroactive application:

[W]here, as in *Loudermill*, the Court applies the announced rule to the case before it and makes no statement as to whether it intends the rule to have retroactive or only prospective effect as to other cases, it will be presumed that the court intends that the rule be given retroactive application.

*Id.* at 227.

We find much merit in this approach. It frees the lower courts from speculating—often disparately—over higher courts' intentions; it alerts the higher courts that their silence speaks for retroactive application and that any contrary intention should be manifest; and it enhances predictability in the law. We also believe this view to be embodied in the frequent announcements, most recently in the supplemental *Law* decision, that *"[U]nless otherwise specified,*

Arizona appellate opinions in civil cases operate both retroactively and prospectively." *Id.*, 157 Ariz. at 160, 755 P.2d at 1148 (emphasis added); *see also Chevron Chemical Co. v. Superior Court*, 131 Ariz. 431, 435, 641 P.2d 1275, 1279 (1982); *Hollywood Continental Films v. Indus. Comm'n,* 19 Ariz.App. 234, 236, 506 P.2d 274, 276 (1973).

It was not "otherwise specified" in *Loudermill.* Thus, we follow the approach taken by the 6th Circuit in applying *Loudermill* retroactively to cases such as this one, pending at the time of its issuance but arising from earlier operative facts.

Even, however, if we approached this question by application of the *Chevron* criteria, we would reach no different conclusion.

The state bases its argument against retroactive application of *Loudermill* primarily on the first of the three *Chevron* criteria. The state argues that, until *Loudermill*, there had been wide adherence to a plurality opinion in *Arnett v. Kennedy*, 416 U.S. 134, 152–154, 94 S.Ct. 1633, 1643–1644, 40 L.Ed.2d 15, 32–33 (1974), for the proposition that, where a public employee's substantive employment rights are established by a statute which provides a *post*-deprivation hearing process, the employee must "take the bitter with the sweet." The state presents *Loudermill* as if it were an "unforeshadowed" rejection of the "clear and reliable precedent" of *Arnett.*

We note that Division Two of this court has accepted this argument in dictum[1] in *Brubaker v. Arizona Department of Economic Security*, 156 Ariz. 577, 580–81, 754 P.2d 304, 307–08 (1987). However, we respectfully disagree with the analysis of our colleagues on this issue.

The Supreme Court did not present its *Loudermill* holding as a sharp break with precedent. Rather, it described the *Arnett* plurality view as having been "specifically rejected by the other six justices" at the time *Arnett* was issued, and as having been "clearly rejected" in later Supreme Court decisions in 1980 and 1982. *Loudermill*, 470 U.S. at 540–41, 105 S.Ct. at 1492–93, 84 L.Ed.2d at 502–503.

The court went on to state:

An essential principle of due process is that a deprivation of life, liberty, or property "be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 656, 94 L.Ed. 865 (1950). We have described "the root requirement" of the Due Process Clause as being "that an individual be given an opportunity for a hearing before he is deprived of any significant property interest." *Boddie v. Connecticut*, 401 U.S. 371, 379, 91 S.Ct. 780, 786, 28 L.Ed. 2d 113 (1971) (emphasis in original); see *Bell v. Burson*, 402 U.S. 535, 542, 91 S.Ct. 1586, 1591, 29 L.Ed.2d 90 (1971). This principle requires "some kind of a hearing" prior to the discharge of an employee who has a constitutionally protected property interest in his employment. *Board of Regents v. Roth*, 408 U.S. [564], at 569–570, 92 S.Ct. [2701] at 2705 [33 L.Ed.2d 548 (1972)]; *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 2698, 33 L.Ed.2d 570 (1972). *As we pointed out last Term, this rule has been settled for some time now. Davis v. Scherer*, 468 U.S. 183, 192, n. 10, 104 S.Ct. 3012, 3018, n. 10, 82 L.Ed.2d 139 (1984); id., at 200–203, 104 S.Ct., at

---

1. The *Brubaker* case had gone to final judgment in the superior court in September of 1984 and was not timely appealed. Brubaker later attempted to reopen the judgment with an untimely motion for new trial, which the trial court treated as a motion pursuant to Rule 60(c), Arizona Rules of Civil Procedure. During the course of post-judgment proceedings, *Loudermill* was decided, and Brubaker argued for its application to his case. Division Two noted that we had applied *Loudermill* in our initial opinion in this case, but contrasted Brubaker's position with Zavala's, holding that, because Brubaker's case, unlike Zavala's, was not pending on appeal when *Loudermill* was issued, Brubaker was not entitled to reopen for a *Loudermill* hearing. We do not disagree with this holding. Division Two went on, however, in dictum, to comment that, even if Brubaker's case were assumed to be still pending, *Loudermill* should not be retroactively applied. *Id.* 156 Ariz. at 580–81, 754 P.2d at 307–08. With this portion of the *Brubaker* decision we disagree for reasons stated *infra.*

3022–24 (BRENNAN, J., concurring in part and dissenting in part.) 470 U.S. at 542, 105 S.Ct. at 1493, 84 L.Ed. 2d at 503–504 (emphasis added).

The court further described the provision of a pre-termination opportunity for the employee to present his side of the case as *"recurringly of obvious value* in reaching an accurate decision." *Id.* at 543, 105 S.Ct. at 1494, 84 L.Ed.2d at 504 (emphasis added). For the proposition that "the only meaningful opportunity to invoke the discretion of the decision maker is likely to be before the termination takes effect," the court cited *Goss v. Lopez,* 419 U.S. 565, 583–584, 95 S.Ct. 729, 740–741, 42 L.Ed.2d 725 (1975) and *Gagnon v. Scarpelli,* 411 U.S. 778, 784–786, 93 S.Ct. 1756, 1760–1761, 36 L.Ed.2d 656 (1973). *Loudermill,* 470 U.S. at 543, 105 S.Ct. at 1494, 84 L.Ed.2d at 504, 505.

We derive the clear impression from this analysis that the Supreme Court thought *Loudermill* long foreshadowed. Adopting that view as our own, we find that the first *Chevron* criterion favors retroactive application.[2]

The second criterion under *Chevron* is whether retroactive application would adversely affect the purpose of the *Loudermill* rule. The question might arise whether that criterion is applied on a case-by-case basis or to all questions of retroactivity across the board. We need not answer that question in this case, however, because the state does not invoke the second criterion in its favor. Rather, it states, "In the Zavala case, the retroactive application of the *Loudermill* decision would be neutral with respect to furthering the purpose of *Loudermill.*"

We turn to the third criterion and consider the equities of retroactive application. The crux of our initial decision is that the state treated Zavala inequitably when it "induced [him] to forego his opportunity to contest suspension [and then] changed his punishment to dismissal without providing notice, a chance to contest the charges, and a chance to present reasons why dismissal should not be ordered." Given the substantial unfairness of this procedure, the equities of retroactive application heavily favor Zavala.

For all of these reasons, we decline to reconsider our application of the rule of *Loudermill* to this case.

In one respect, however, the appellees' motion for reconsideration has persuaded us that our original dispositional order was overly broad. We there indicated our finding that, under the circumstances of this case, "[w]e would deem it unfair and inconsistent with due process to permit the DOC to recommence dismissal proceedings, long after the fact, based upon the original allegations." We ordered that Zavala be reinstated with back pay and benefits retroactive to the date of his dismissal, subject, however, to the authority of the DOC to reinstate his initial, unprotested suspension.

The state has appropriately called our attention to *Civil Service Commission of City of Tucson v. Mills,* 23 Ariz.App. 499, 534 P.2d 430 (1975), a case arising from the superior court's reversal of an administrative body's approval of an employment termination. The superior court ordered reinstatement upon remand. The court of appeals modified the order of reinstatement, holding that the trial court should simply

---

**2.** The Eighth Circuit has analyzed this issue similarly, concluding, "Long before *Loudermill* was decided, the right to 'some kind of hearing' before termination was well established." *Peery v. Brakke,* 826 F.2d 740, 744 (8th Cir.1987). The Washington Court of Appeals has followed the Eighth Circuit in concluding, through *Chevron* analysis, that *Loudermill* should be retroactively applied. *Bullo v. City of Fife,* 50 Wash.App. 602, 749 P.2d 749, 752–753 (1988). Courts that have applied *Loudermill* retroactively without considering the *Chevron* criteria are listed in *Bullo,* 749 P.2d at 752, n. 3, and include the Washington Supreme Court, *Danielson v. Seattle,* 108 Wash.2d 788, 742 P.2d 717 (1987) and the First and Ninth Circuits, *Brasslett v. Cota,* 761 F.2d 827 (1st Cir.1985); *Matthews v. Harney County, Oregon School District No. 4,* 819 F.2d 889 (9th Cir.1987). *See also Maurello v. Department of Health & Human Resources, Office of Management and Finance,* 510 So.2d 458, 461 (La.App. 1 Cir.1987). The South Dakota Supreme Court has concluded, however, through analysis under *Chevron,* that *Loudermill* should not be retroactively applied. *Lee v. South Dakota Department of Health,* 411 N.W.2d 108, 112 (S.D.1987).

have ordered the matter remanded for further proceedings. The court stated:

> The general rule seems to be that where an administrative agency has been found to have acted in violation of procedural requirements or arbitrarily, the administrative agency is entitled to have the proceedings returned to it.

23 Ariz.App. at 502–503, 534 P.2d at 433–34.

In a later decision arising from the same case, *City of Tucson v. Mills*, 114 Ariz. 107, 559 P.2d 663 (1976), we clarified that our remand was not merely a mandate to perform the ministerial act of reinstatement:

> A remand for further proceedings means that the case is returned to the administrative agency so that it may take further action in accordance with the applicable law.... Such a remand does not dismiss or terminate the administrative proceeding. Rather, the administrative agency may take a fresh look at the matter involved.

114 Ariz. at 110, 559 P.2d at 666.

■ We conclude that we overstepped our bounds in resolving as a matter of law that the recommencement of dismissal proceedings in this case would be inconsistent with due process. Rather, that is an issue at least partially involving factual determinations, and it should be presented, at least initially, at the administrative level. Among the subsidiary issues is whether, if the state chooses to persist in seeking dismissal, Zavala would be prejudiced in defending against reasserted charges at this time.

We note that in *Loudermill* itself, the supreme court did not order reinstatement, but simply "remanded for further proceedings consistent with this opinion." 470 U.S. at 548, 105 S.Ct. at 1496, 84 L.Ed.2d at 507.

Accordingly, we vacate our prior order of reinstatement and instead remand this case to the trial court with directions to return it to the administrative agency for proceedings consistent with this opinion.

In all other respects, our initial opinion is reaffirmed, and the appellee's motion for reconsideration is denied.

GRANT, P.J., and CONTRERAS, J., concur.