786 P.2d 1027

**James Gerald ELGIN and Stanley W. Fogler, Plaintiffs–Appellants, Cross–Appellees,**

v.

**GREAT–WEST LIFE ASSURANCE COMPANY, a Canadian corporation, Defendant–Appellee, Cross–Appellant.**

**No. 1 CA–CIV 88–173.**

Court of Appeals of Arizona, Division 1, Department D.

Oct. 19, 1989.

Review Denied Feb. 26, 1990.

Beus, Gilbert, Wake-& Morrill by Shawn K. Aiken, Phoenix, for plaintiffs-appellants, cross-appellees.

Sorenson & Moore by Joseph P. Rocco and Timothy W. Evens, Phoenix, for defendant-appellee, cross-appellant.

## OPINION

KLEINSCHMIDT, Presiding Judge.

In this case we decide that *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), is to be given retroactive effect. In *Pilot Life*, the United States Supreme Court held that the federal Employee Retirement Income Security Act of 1974 preempts state common law tort and contract actions to recover for the improper handling of claims under employee benefit plans.

The issue arose in the following manner. The plaintiff, James Elgin, owned and operated a small business. In 1984, he was severely injured at his place of business when a steel tank crushed his leg. He submitted claims to the defendant, Great-West Life Assurance Company, for his hospitalization expenses. Great-West had issued the policy pursuant to a group health insurance plan that was regulated under the Employee Retirement Income Security Act of 1974 (ERISA) (29 U.S.C.S. §§ 1001, et seq.).

Great-West refused to pay, claiming that the accident came within a policy exclusion for injuries occurring while the insured was "working for pay or profit." According to the evidence Elgin subsequently produced, as a result of Great-West's refusal to discharge Elgin's medical bills, his credit was damaged and his business failed.

In 1985, Elgin sued Great-West for breach of contract and bad-faith denial of his claim. On October 29, 1986, the jury rendered a verdict in Elgin's favor awarding him $920,000 on the bad-faith claim for emotional distress, injury to credit, and loss of his business. The precise amount of damages for contractual benefits had been left unresolved to be decided later by the trial judge.

The trial judge assessed damages on the claim for benefits in the amount of $18,670.88 and awarded Elgin attorney's fees in the amount of $50,000. This was reduced to a formal judgment signed on March 30, 1987, awarding Elgin $18,670.88 for breach of contract, $920,000 on the bad-faith claim, $50,000 in attorney's fees, and $2,922.98 in taxable costs.

Great-West subsequently filed a Motion for New Trial, Judgment Notwithstanding the Verdict, or Remittitur. While this was pending, the United States Supreme Court handed down *Pilot Life* on April 6, 1987, ruling that all state law causes of action for bad faith and breach of contract on insurance policies regulated under ERISA were preempted by that statute. The trial judge, on the basis of *Pilot Life*, granted Great-West's Motion for Judgment Notwithstanding the Verdict. *Pilot Life* was later found not to apply, the trial judge remitted the bad-faith verdict to $600,000, and allowed Elgin to file a Motion for Leave to File an Amended Complaint to Conform to the Evidence to assert an ERISA claim for benefits under the contract in the amount of $18,670.88. This motion was subsequently denied. Elgin accepted the remittitur and appealed.

## PILOT LIFE IS RETROACTIVE

The issue on appeal is whether the rule in *Pilot Life* is to be applied retroactively so that it precludes recovery on the state law claims. We hold that it does, and we affirm the order of the trial court granting judgment notwithstanding the verdict. No extensive review of *Pilot Life* is necessary. It is so squarely on point on the applicable substantive law that it is enough, for the moment, to repeat its holding, i.e., ERISA

preempts state common law tort and contract actions asserting improper processing of a claim for benefits under an ERISA regulated employee benefit plan.

■■■ A civil opinion is presumed to operate retroactively as well as prospectively unless otherwise stated. *Brannigan v. Raybuck,* 136 Ariz. 513, 520, 667 P.2d 213, 220 (1983). This presumption may be overcome if the three part test established in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971) is met. *See Chevron Chem. Co. v. Superior Court,* 131 Ariz. 431, 641 P.2d 1275 (1982), in which the Arizona Supreme Court adopted and applied the *Chevron Oil* test. The factors to be considered and balanced are:. (1) whether the decision establishes a new legal principle by either overruling clear and reliable precedent or deciding an issue whose resolution was not clearly foreshadowed; (2) whether retroactive application will advance or retard operation of the rule, considering its prior history, purpose and effect; and (3) whether retroactive application will produce substantial inequitable results. *Chevron Oil,* 404 U.S. at 106–07, 92 S.Ct. at 355, 30 L.Ed.2d 306.

In a supplemental opinion issued in *Zavala v. Arizona State Personnel Board,* 159 Ariz. 256, 766 P.2d 608 (App.1988), we questioned whether any lower court ought ever employ the *Chevron Oil* criteria to limit the opinion of a higher court to prospective application. We observed that the Second and Sixth Circuit Courts of Appeals do not do so, and explained why certainty and consistency favor this approach. We envisioned the *Chevron Oil* criteria only as something for each appellate court to consider in deciding whether to give its own opinions prospective application. If we were to follow *Zavala,* the holding in *Pilot Life* would clearly be retroactive because the Supreme Court in *Pilot Life* applied the rule it announced in that case to foreclose the plaintiff's suit. Had it intended the rule to be prospective only, the result in *Pilot Life* would have been different.

Elgin, at oral argument on appeal, asserted that the cases we relied on in *Zavala* have been undercut by subsequent decisions in the same circuits.[1] Without abandoning *Zavala,* an analysis of the *Chevron Oil* criteria leads us to the same result we would reach under *Zavala*—the rule of *Pilot Life* is retroactive.

■■■ We turn to a consideration of the test. Its first facet is whether *Pilot Life* overruled existing authority or decided an issue the resolution of which was not foreshadowed. Before the decision in *Pilot Life,* there was a split of authority on the question of whether ERISA preempted claims based on decisional state law. A number of courts had held that ERISA was preemptive.[2] Elgin acknowledges this split

---

1. The cases we relied on are *Welyczko v. U.S. Air, Inc.,* 733 F.2d 239 (2d Cir.1984); *Ratliff v. Wellington Exempted Village Schools Board of Education,* 820 F.2d 792 (6th Cir.1987); *Gurish v. McFaul,* 801 F.2d 225 (6th Cir.1986); *Smith v. General Motors Corp.,* 747 F.2d 372 (6th Cir. 1984). The later decisions cited by the appellant in oral argument were *Thomas v. Shipka,* 829 F.2d 570 (6th Cir.1987) and *Byrne v. Buffalo Creek R. Co.,* 765 F.2d 364 (2d Cir.1985). The matters discussed in *Zavala* are clearly related to a suggestion made in Great–West's brief to the effect that Arizona courts are compelled by the Supremacy Clause of the United States Constitution to forego an inquiry into whether a decision of the Supreme Court is to be applied prospectively only. The case which it cites in support of this proposition seems to do no more than suggest that there is a strong presumption of retroactivity. *See Simpson v. Director, Office of Workers' Compensation Programs,* 681 F.2d 81 (1st Cir.1982), *cert. denied,* 459 U.S. 1127, 103 S.Ct. 762, 74 L.Ed.2d 977 (1983).

2. *See Dependahl v. Fallstaff Brewing Corp.,* 653 F.2d 1208 (8th Cir.1981) (preempts claims of tortious interference with contractual relations); *Powell v. Chesapeake & Potomac Telephone Co.,* 780 F.2d 419 (4th Cir.1985) (preempts common law and statutory breach of duty of good faith and fair dealing claims); *Blau v. Del Monte Corp.,* 748 F.2d 1348 (9th Cir.1984) (preempts state common law claims for breach of contract, estoppel, fraud, and deceit); *Winterrowd v. David Friedman & Co.,* 724 F.2d 823 (9th Cir.1984) (preempts claim for punitive damages); *Lafferty v. Solar Turbines Int'l,* 666 F.2d 408 (9th Cir.1982) (preempts common law contract claim); *Baker v. Caravan Moving Corp.,* 561 F.Supp. 337 (N.D.Ill.1983) (preempts penalties for failure to contribute to benefit plans); *Russell v. Massachusetts Mut. Life Ins. Co.,* 722 F.2d 482 (9th Cir.1983) (preempts state causes of action for improper handling of disability claims under benefit plans).

of authority, but he says that after the Supreme Court decided the case of *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985), both state and federal courts consistently held that claims-review-fiduciaries for fully insured employee benefit plans were subject to the full measure of state remedies.[3] To evaluate this argument, some understanding of *Metropolitan Life* is necessary.

*Metropolitan Life* concerned a Massachusetts statute which set forth mandatory minimum health care benefits for inclusion in general health insurance policies. Certain insurers insisted that the Massachusetts statute did not apply to policies covering employee health benefits purchased pursuant to collective bargaining agreements regulated by the National Labor Relations Act. The insurers took the position that the Massachusetts statute was preempted by both ERISA and the NLRA. Massachusetts sued to require the insurers to provide the coverage mandated by the statute, and the Massachusetts Supreme Judicial Court ultimately found that the state statute was not preempted by either ERISA or the NLRA.

The decision turned on the interpretation of three different sections of ERISA: section 514(a), which provides that state law relating to employee benefit plans is preempted; section 514(b)(2)(A), which is the saving clause that excepts from preemption laws that regulate insurance; and section 514(b)(2)(B), which makes clear that a state law that purports to regulate insurance cannot deem an employee benefit plan to be an insurance company. The Supreme Court of the United States held that the Massachusetts statute was a law that regulates insurance and, as such, was saved from preemption by the provisions of section 514(b)(2)(A). It rejected the insurers' argument that the only state regulations that come within the saving clause are those unrelated to the substantive provisions of ERISA.

If any trend against preemption is discernable after *Metropolitan Life*, it is a weak one. When Elgin asserts that following *Metropolitan Life* he "had every reason to expect and rely upon numerous state and federal court decisions holding that plans like Great-West's were subject to 'bad faith' and other state law actions," he gives his point more weight than it deserves. None of the federal cases which decided against preemption which were issued after *Metropolitan Life*, except for the Circuit Court's decision in *Pilot Life* itself, were decided at the appellate level. They are all district court and state court cases that co-existed with appellate authority to the contrary.

The Supreme Court, in *Pilot Life*, had no trouble finding that *Metropolitan Life* had little bearing on the precise question of preemption of state causes of action for mishandling claims. Justice O'Connor,

**3.** *See, e.g., Trogner v. New York Life Ins. Co.,* 633 F.Supp. 503, 509 (D.Md.1986) (state common law contract and bad-faith claims against employee benefit plan insurer are not preempted by ERISA); *Simmons v. Prudential Ins. Co. of America,* 641 F.Supp. 675, 680 (D.Colo.1986) (state law tort claims against insurer are exempted from preemption by ERISA's saving clause, § 1144(b)(2)(A)); *Munoz v. Prudential Ins. Co. of Am.,* 633 F.Supp. 564, 571–72 (D.Colo. 1986) (ERISA does not preempt state law claims against nonfiduciary); *Lessard v. Metropolitan Life Ins. Co.,* 618 F.Supp. 1268 (D.Me.1985) (former employee's state law contract claims against plan insurer for payment of long-term disability benefits are not preempted by ERISA); *Presti v. Connecticut Gen. Life Ins. Co.,* 605 F.Supp. 163 (N.D.Cal.1985) (ERISA does not preempt application of state common law of bad faith or unfair claim settlement practices statute to an insurer that administers an employee benefit plan); *Hood v. Prudential Ins. Co. of Am.,* 460 So.2d 1227, 1231 (Ala.1984) (ERISA bars cause of action against ERISA plan but not against insurer providing benefits through an ERISA plan); *McLaughlin v. Connecticut Gen. Life Ins. Co.,* 565 F.Supp. 434 (N.D.Cal.1983) (state rules for construing insurance contract and implied covenant of good faith and fair dealing are state laws "regulating insurance" and are exempt from preemption under ERISA); *Eversole v. Metropolitan Life Ins. Co.,* 500 F.Supp. 1162 (C.D.Cal.1980) (plaintiff's state law claims against group benefit insurer for 1) breach of duty of good faith and fair dealing, 2) common law fraud, 3) breach of fiduciary duties, and 4) breach of state statutory duties are not preempted by ERISA); *Benike v. Scarborough Ins. Trust,* 150 Mich.App. 710, 714, 389 N.W.2d 156, 158 (1986) (ERISA does not preempt state regulation prescribing the construction of ambiguous insurance policies).

writing for a unanimous court in *Pilot Life,* observed that the considerations which guided the decision in *Metropolitan Life* were a common sense view of the language of the saving clause and case law interpreting the phrase "business of insurance" under another federal statute regulating insurance, and that these weighed against the argument that ERISA was not preemptive. She went on to point out that while general language in· *Metropolitan Life* might suggest that the saving clause applied to state law, the question ₅of whether that included common law causes of action was not presented or decided in *Metropolitan Life.* She said:

> *Metropolitan Life,* however, did not involve a state law that conflicted with a substantive provision of ERISA. Therefore, the Court's general observation—that state laws related to ERISA may also fall under the saving clause—was not focused on any particular relationship or conflict between a substantive provision of ERISA and a state law. In particular, the Court had no occasion to consider in *Metropolitan Life* the question raised in the present case: whether Congress might clearly express, through the structure and legislative history of a particular substantive provision of ERISA, an intention that the federal remedy provided by that provision displace state causes of action. Our resolution of this different question does not conflict with the Court's earlier general observations in *Metropolitan Life.*

*Pilot Life,* 481 U.S. at 57, 107 S.Ct. at 1558, 95 L.Ed.2d at 54.

In summary, *Pilot Life* did not establish a new legal principle by overruling clear and reliable precedent. Nor did it decide an issue whose resolution was not clearly foreshadowed. *Pilot Life* simply settled a question that was in hot dispute. Where the law is unsettled, a decision which resolves it should generally receive retroactive effect. *Occidental Chem. v. International Chem. Workers Union,* 853 F.2d 1310 (6th Cir.1988); *Simpson v. Director of Office of Workers' Compensation Programs,* 681 F.2d 81 (1st Cir.1982).

We turn to consider the next facet of the *Chevron Oil* test: whether retroactive application will advance or retard the operation of the rule announced in *Pilot Life.* The real question is how a failure to apply *Pilot Life* retroactively will affect the policies that underlie that decision. One such policy is the preclusion of damage awards that frequently ensue from a finding of bad faith and that tend to undermine the fiscal integrity of employee benefit plans. While Elgin's recovery in this case would presumably not have a significant impact in that regard, the allowance of his judgment, and the judgments recovered by others similarly situated, certainly would not serve that policy. Congressional intent ought to be given effect as soon as it is defined with finality. So too, as the Court of Appeals for the First Cicuit observed generally in *Simpson,* retroactivity promotes the uniform treatment of litigants and is usually fairest and the least arbitrary way to proceed.

The third facet of *Chevron Oil* that we consider is whether the retroactive application of *Pilot Life* will produce substantial inequitable results. The third factor and the first factor to be considered in the *Chevron Oil* analysis overlap. *Fitzgerald v. Larson,* 769 F.2d 160, 164 (3d Cir.1985); *see also Thomas v. Shipka,* 829 F.2d 570, 574 (6th Cir.1987), (vacated on other grounds, *Thomas v. Shipka,* 488 U.S. ——, 109 S.Ct. 859, 102 L.Ed.2d 984 (1989), and rendered moot by subsequent decision in *Thomas v. Shipka,* 872 F.2d 772 (6th Cir. 1989)). This interrelationship, of course, weighs against Elgin's position.

Elgin argues that if *Pilot Life* is applied retroactively he will be deprived of a just verdict and judgment, and he will have no further day in court. While it is true that Elgin will lose his large judgment for emotional distress, loss of business, and injury to credit, these are damages which the Supreme Court has determined Congress never intended he be able to recover.

It is by no means clear, however, that Elgin will be left without any remedy at all. Neither party addressed this aspect of the case in detail in the briefs, perhaps because

both have something to lose by taking the position that Elgin may still have a viable claim which he may pursue in the courts. In any event, the issue was discussed at oral argument, and our own inquiry suggests that Elgin may possibly still bring an action under ERISA to recover his benefits due and his attorney's fees. *See* 29 U.S. C.S. §§ 1132(a) and 1132(g)(1).

Counsel for Elgin suggested that the time to bring such an action might have expired. Because ERISA contains no limitation period of its own, the most analogous state statute of limitations applies. *Miles v. New York State Teamsters Conference & Retirement Fund,* 698 F.2d 593 (2d Cir.), *cert. denied* 464 U.S. 829, 104 S.Ct. 105, 78 L.Ed.2d 108 (1983); *Nolan v. Aetna Life Ins. Co.,* 588 F.Supp. 1375 (E.D. Mich.1984). Assuming that the six-year limitation applicable to actions on written contracts applies, Elgin is still within that period. A.R.S. § 12–548. See also A.R.S. section 12–504(A) (Supp.1988), which preserves causes of action which have been terminated for a variety of reasons and which would seem to save Elgin's claim. We do not decide that some part of Elgin's claim will survive. Our point is that Elgin has not demonstrated that it will not.

### OTHER ISSUES

■ Elgin argues that even if *Pilot Life* is retroactive, he should have been allowed to amend his complaint to state a cause of action under ERISA and, had he been permitted to do so, he would be entitled to his contractual damages and his attorney's fees. There are a number of reasons why we disagree. To have granted Elgin leave to amend his complaint to state a claim under ERISA and then enter judgment for contractual damages would circumvent Great–West's statutory right to remove the case to the federal court. *See Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). Further, under Section 1132 of ERISA, Elgin has no right to a jury trial. *Wardle v. Central States, Southeast & Southwest Pension Fund,* 627 F.2d 820 (7th Cir.1980).

If these were not reasons enough to deny Elgin's Motion for Leave to Amend the Complaint to state an ERISA claim upon which judgment can now enter, Great–West also suggests that the jury did not consider the contract question under the burden of proof required by ERISA, that Elgin did not exhaust his administrative remedies as required by ERISA, that he did not join either the plan under which he was insured or the plan administrator as defendants, and that his claim is properly brought against them as opposed to Great–West. *See Gelardi v. Pertec Computer Corp.,* 761 F.2d 1323 (9th Cir.1985); *Cohen v. Equitable Life Assurance Soc'y,* 196 Cal.App.3d 669, 242 Cal.Rptr. 84 (1987). Elgin failed to respond to any of these arguments, and at oral argument, acknowledged that the trial judge was probably correct in denying his Motion to Amend his Complaint so that a judgment consistent with the remedy permitted by ERISA could enter thereon. The trial judge did not err on this point.

Great–West filed a cross-appeal raising a number of errors and circumstances that it claims entitle it to a new trial. All of them are mooted by our decision in Elgin's appeal. Great–West also claims that it was entitled to judgment notwithstanding the verdict on Elgin's bad-faith claim, since the claim on the policy was "fairly debatable" and because the trial court awarded excessive attorney's fees. These issues are also rendered moot by our decision.

Great–West also claims that it was entitled to a judgment notwithstanding the verdict based on the "bunkhouse rule," a proviso of workers' compensation law that permits a worker, who resides on his employer's premises and is injured during his leisure time, to recover compensation benefits to the exclusion of common law remedies. *See Hunley v. Industrial Comm'n,* 113 Ariz. 187, 549 P.2d 159 (1976). The "bunkhouse rule" is confined to the law of workers' compensation and avails Great–West nothing in this case.

Finally, Great–West argues that it is entitled to judgment notwithstanding the verdict because Elgin was not a proper party

plaintiff, since any cause of action he may have had passed to the trustee in bankruptcy by operation of law when bankruptcy was filed. The trustee in bankruptcy is a party plaintiff in this action. We believe the extent of Elgin's interest is best resolved if he decides to proceed further.

The judgment notwithstanding the verdict is affirmed.

FIDEL and JACOBSON, JJ., concur.